# Exhibit A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### *Southern Division*

|  |  |
|---|---|
| **SKY ANGEL U.S., LLC**<br>1300 Goodlette Road North<br>Naples, FL 34102<br><br>*Plaintiff*<br><br>v.<br><br>**DISCOVERY COMMUNICATIONS, LLC**<br>One Discovery Place<br>Silver Spring, MD 20910<br>(County of residence: Montgomery County)<br><br>**Serve:**<br>The Corporation Trust Inc.<br>351 West Camden Street<br>Baltimore, MD 21201<br><br>**ANIMAL PLANET, L.L.C.**<br>Corporation Service Company<br>1013 Centre Road<br>Wilmington, DE 19805<br><br>**Serve:**<br>The Corporation Trust Inc.<br>351 West Camden Street<br>Baltimore, MD 21201<br><br>*Defendants* | Case No.: _____ |

## COMPLAINT

Sky Angel U.S., LLC files this Complaint against Discovery Communications, LLC and Animal Planet, L.L.C. for Defendants' improper termination of an Affiliation Agreement in breach of their contractual obligations, which has caused substantial business losses to Sky Angel U.S., LLC.

## PARTIES

1.    Sky Angel U.S., LLC ("Sky Angel") is a Florida limited liability company with its principal place of business at 1300 Goodlette Road North, Naples, Florida 34102.  Sky Angel distributes multiple channels of Internet-protocol-formatted video programming, as described further below.

2.    Discovery Communications, LLC ("Discovery") is a Delaware limited liability company with its principal place of business at One Discovery Place, Silver Spring, Maryland 20910.  Discovery provides a daily programming service, including those channels currently or previously known as Discovery Channel, Discovery Kids Channel, Discovery Home Channel, and Military Channel.  Upon information and belief, Discovery's ultimate parent company is Discovery Communications, Inc.

3.    Animal Planet, L.L.C. ("Animal Planet") is a Delaware limited liability company.  According to the Maryland Department of Assessments and Taxation website, its current principal office is at Corporation Service Company, 1013 Centre Road, Wilmington, Delaware 19805.  Animal Planet provides a daily programming service known as the Animal Planet.  Upon information and belief, Animal Planet's ultimate parent company is Discovery Communications, Inc.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).  Plaintiff and Defendants are citizens of different states, and the amount in controversy is in excess of $75,000.

5.    Venue is proper under 28 U.S.C. § 1391.

6.    This Court has personal jurisdiction over the Defendants.  This Court has personal jurisdiction over Discovery pursuant to Maryland Code, Courts and Judicial Proceedings Sections 6-102 and 6-102 and has personal jurisdiction over Animal Planet pursuant to Section 6-202.  In addition to all

2

other bases for personal jurisdiction, the Defendants have consented to be subject to the jurisdiction of any court of record in the State of Maryland for the adjudication and resolution of any matter or right relating to the Affiliation Agreement at issue.

## ALLEGATIONS COMMON TO ALL COUNTS

**A.    Background on Sky Angel's Distribution Technology**

7.    Sky Angel presently operates a subscription-based multichannel video programming distribution service under the brand name FAVE-TV, which currently provides numerous real-time channels of family-oriented video programming.  Channels currently carried on FAVE-TV include the Fox News Channel, Fox Business, Bloomberg Television, NBC Sports Network, CBS Sports, NFL Network, NBA TV, the Tennis Channel, the Weather Channel, the Hallmark Channel, QVC, and others. In addition, Sky Angel makes available to its subscribers multiple non-profit, faith-based channels.  Sky Angel provides this video programming directly to America's television sets on a nationwide basis.

8.    Pursuant to individually negotiated agreements, Sky Angel receives programming from its content partners via satellite earth stations and fiber optic connections.  After Sky Angel receives the content and makes any necessary quality adjustments, it formats the programming using advanced Internet Protocol ("IP") technology and then bundles and securely encrypts the programming.  Sky Angel then transmits the encrypted, IP-formatted programming via fiber it controls to "headends" in New York and California.  From there, the programming is sent via broadband Internet connections to the proprietary set-top boxes owned or leased by Sky Angel's subscribers.  Sky Angel sends signals to two central locations over a closed and encrypted fiber optic transmission path.  These central locations then distribute the programming over high-speed internet connections to set-top boxes.  The services are

3

available to consumers who have broadband Internet access via digital subscriber lines ("DSL"), wirelines, or wireless connections.

9.      Sky Angel's set-top boxes have a broadband Internet input and video outputs that directly connect to a television set.  Through the broadband Internet input, a set-top box receives encrypted video programming from Sky Angel, which is then decoded and sent to the subscriber's connected television set.

10.      The subscribers' set-top boxes are secured by cable-and-satellite industry standard encryption and conditional access technologies.

11.      Sky Angel's service is and, at all times relevant to this Complaint, has been secure from unauthorized uses.

**B.      Sky Angel's Affiliation Agreement with Discovery and Animal Planet**

12.      Sky Angel, Discovery, and Animal Planet entered into an "Affiliation Agreement" dated October 3, 2007 ("Agreement").  The Agreement is attached as Exhibit 1 to this Complaint.

13.      Sky Angel executed the Agreement on October 5, 2007, and Discovery and Animal Planet executed the Agreement on October 16, 2007.  Discovery executed the Agreement on behalf of Animal Planet as Animal Planet's "representative."  Upon information and belief, at all times relevant to this Complaint, Discovery has acted on behalf of Animal Planet and had sufficient legal right from Animal Planet to do so.

14.      Through the Agreement, Discovery and Animal Planet (collectively referred to as "NETWORK" in the Agreement) agreed to provide to Sky Angel (referred to as "Affiliate" in the Agreement) a non-exclusive license and right to distribute and exhibit five programming channels: Discovery Channel, Discovery Kids Channel, Discovery Home Channel, Military Channel, and Animal

4

Planet (collectively the "Services" and each, individually, a "Service" in the Agreement) on Sky Angel's "Affiliate System."

15.    Sky Angel's right to distribute and exhibit these family-friendly programming channels is essential to Sky Angel's competitiveness in the market for family-oriented video programming distribution services.

16.    Section 1.1 of the Agreement provides that the "Affiliate System" may be an IP System. Section 1.1.2 defines "IP System" as follows:

> 1.1.2    An "IP System" shall mean a multichannel video distribution system which utilizes Internet protocol ("IP") technology to deliver video programming services over a closed and encrypted transmission path over a national fiber-optic network to a central location for subsequent distribution of such video programming services with proprietary-encoding over a high-speed data connection to set-top-boxes that are secured by industry-standard encryption and conditional access technologies and are connected to Subscribers' television sets.

17.    Section 7 of the Agreement entitled "Distribution of the Services by Affiliate" sets forth the terms controlling the distribution of services by Sky Angel.   The portions relevant to this dispute read:

> 7.1 Affiliate shall distribute each Service in its entirety, without delay, interruption, alteration, addition, deletion, or editing of any portion thereof and in a manner which will permit highest quality reception by Service Subscribers of each Service's audio and visual materials.  Affiliate shall maintain suitable facilities for the pick-up and retransmission of the Service signal(s) throughout Affiliate Systems and shall comply with all applicable local, state, and federal laws, rules, regulations, licensing requirements, and franchises. Affiliate represents and warrants that each satellite-delivered, advertiser supported programming service, including each Service, that it distributes to Subscribers shall be distributed in digital rather than analog format. Affiliate acknowledges and agrees that throughout the Term, each of the programming services provided by Affiliate to Subscribers of its Affiliate Systems shall be delivered in the same manner, and using the same technology, as the Services. If any programmer that provides one or more programming services to Affiliate for distribution during the Term ceases to provide a programming service to Affiliate (other than based on expiration of the applicable contract for such service), Affiliate shall immediately notify NETWORK of such cessation and the reason therefore, and NETWORK shall be entitled to terminate this

5

Agreement. Affiliate shall encrypt each of the Service signals or use a substantially similar method of security to secure each of the Service signals from Affiliate's point of receipt of the Service signals through the points of reception by the Service Subscribers.

\*\*\*

7.2 Affiliate shall take all necessary precautions with respect to Affiliate Systems to ensure that the Services are-received only by parties who are Service Subscribers.

7.3 Upon request from NETWORK, Affiliate shall conduct an audit designed to reveal unauthorized or illegal recipients of the Services, and it will promptly provide NETWORK with the results of such audit.

18.     In exchange for the license and right to distribute the Services, Sky Angel agreed to pay monthly license fees to Discovery and Animal Planet on per-subscriber basis. Pursuant to the Agreement, Sky Angel would pay license fees associated with Discovery Channel, Discovery Kids Channel, Discovery Home Channel, and Military Channel to Discovery. Sky Angel would pay license fees associated with the Animal Planet channel to Animal Planet. The agreed upon terms for calculating the license fees are set forth in Section 3 and Exhibit B to the Agreement.

19.     Section 12 of the Agreement, entitled "Default and Termination," states in relevant part:

12.1     Due and timely performance by Affiliate is of the essence hereof. If Affiliate defaults in the (a) making of any payments hereunder or (b) performance of any of its material obligations hereunder, including its obligations to maintain the security of a Service signal which failure to maintain the security of a signal results in a theft of such Service in an amount equal to or greater than ten percent (10%) of Affiliate's then current base of Subscribers to that Service, and such default shall not be cured within five (5) days after written notice thereof to Affiliate, or if Affiliate becomes insolvent, or if a petition under any bankruptcy act shall be filed by or against Affiliate (which petition, if filed against Affiliate, shall not have been dismissed within thirty (30) days thereafter), or if Affiliate executes an assignment for the benefit of creditors, or if a receiver is appointed for the assets of Affiliate, or if Affiliate takes advantage of any insolvency or any other like statute (any of the above acts are hereinafter called "Event of Default"), then NETWORK may, in addition to any and all other rights which NETWORK may have against Affiliate, terminate this Agreement by giving written notice to Affiliate at any time after the occurrence of an Event of Default. Affiliate shall, nevertheless, remain liable for all moneys due or to become due to NETWORK pursuant hereto, and shall be liable for all costs and expenses of collection, including reasonable collection agency

6

fees, attorneys' fees, and court fees Incurred by NETWORK in exercising its rights hereunder. Notwithstanding anything to the contrary herein, in the event NETWORK determines that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of Affiliate are not satisfactory, NETWORK shall have the right to terminate this Agreement.

20.     Section 13.8 of the Agreement states that the rights and obligations of the parties would be governed by and construed with the laws of the State of Maryland applicable to contracts entered into and fully performed therein without conflict of laws principles.

21.     Section 13.5 of the Agreement sets forth the following integration clause:

13.5     With respect to the subject matter of this Agreement, this Agreement and the Exhibits hereto (i) set forth the entire agreement between the parties hereto and any parties who have in the past or who are now representing either of the parties hereto; (ii) supersede all prior understandings and communications between the parties, oral or written; and (iii) constitute the entire agreement between the parties. No amendment, supplement, modification, or waiver of any provision of this Agreement, nor consent to any departure by Affiliate therefrom, nor any novation or restatement of this Agreement shall be effective unless the same shall be in writing and signed by Affiliate and NETWORK.

22.     The parties agreed that the Term of the Agreement would commence upon October 3, 2007 and would expire on December 31, 2014.

## C.     Contract Performance until April 2010

23.     Sky Angel fully performed on its obligations under the Agreement.

24.     Sky Angel distributed the programming channels currently or previously known as Discovery Channel, Animal Planet, Discovery Kids Channel, Discovery Home Channel, and the Military Channel under the Agreement for approximately two and a half years.

25.     At all times, Sky Angel timely paid the license fees due to Discovery and Animal Planet under the Agreement.

26.     During the time of contract performance, neither Discovery nor Animal Planet ever complained about *any* aspect of Sky Angel's performance or distribution methodology, including the security or integrity of Sky Angel's system.

27.     During the time of contract performance, neither Discovery nor Animal Planet ever requested an audit for purposes of investigating whether the Services were only being received by subscribers, as permitted by Section 7.3 of the Agreement.

28.     During the time of contract performance, there had been no change—and indeed no material change—in the Sky Angel signal integrity or signal security measures or distribution methodology.

29.     Fully satisfied with Sky Angel's performance, in August and September 2009, approximately two years after entering into the Agreement, Discovery urged Sky Angel to add Discovery's Science Channel to the Sky Angel lineup subject to the monthly payment of additional per-subscriber fees and to commit to adding more Discovery programming channels as the Sky Angel system grew.

**D.      Discovery's Improper Termination of the Affiliation Agreement**

30.     By letter dated January 22, 2010, Discovery, acting on its own behalf and on behalf of Animal Planet, notified Sky Angel that it would be terminating the Agreement effective on April 22, 2010.

31.     Discovery stated as follows:

We have determined that the distribution methodology used by and on behalf of Affiliate is not satisfactory.  Accordingly, pursuant to Section 12.1 of the Agreement, we hereby elect to terminate the Agreement.  In order to provide for an orderly transition process, including notification to your subscribers, we will provide you with a three (3) month transition period; accordingly, the Agreement will terminate effective on April 22, 2010.

8

32.   In response to Discovery's notice of termination, on March 4, 2010, Sky Angel served a response letter, explaining that:

> During the course of the Affiliation Agreement, Sky Angel has abided by all of its terms scrupulously. For example, throughout the existence of the Affiliation Agreement, Discovery has known that Sky Angel operates an IP System for its distribution of video programming, as provided for in Sections 1.1, 1.1.2, 7.1, 7.2, and 7.4 of the Affiliation Agreement. The IP System operated by Sky Angel has functioned flawlessly throughout the term of the Affiliation Agreement, Discovery did not object to it for more than two years, and Discovery has no reasonable basis for its belief that this IP distribution methodology is in any way unsatisfactory.

33.   Sky Angel also explained that it was "prepared to cooperate in establishing the security of its system to Discovery's reasonable satisfaction," and Sky Angel "offer[ed] its full cooperation to Discovery to provide it with all reasonable assurances that Sky Angel's distribution methodology is satisfactory so that the Affiliation Agreement may continue."

34.   Sky Angel insisted that Discovery immediately rescind its decision to terminate.

35.   By letter dated March 19, 2010, Discovery and Animal Planet responded but offered no other detail regarding the alleged dissatisfaction with the distribution methodology.

36.   In response to the impending date that Discovery and Animal Planet would cut off access to the programming signals, Sky Angel filed a Program Access Complaint and Emergency Petition for Temporary Standstill with the Federal Communications Commission. The Program Access Complaint relied on the 1992 Cable Act and implementing rules.

37.   In the Opposition to the Emergency Petition for Temporary Standstill, Discovery and Animal Planet made clear that their termination of the Agreement was unrelated to Sky Angel's performance. Rather, Defendants admitted that:

> Discovery has concluded that there is a substantial legal risk that licensors of its programming will view the transportable Sky Angel distribution methodology as exceeding the distribution rights Discovery has. Discovery has further identified a

9

serious and irreparable business risk in the form of damaged relations with its distributors, who might view as having granted Sky Angel rights that it refused them and that Discovery claimed not to grant anyone. Discovery also could face additional and substantial legal, business and financial risks if any of its distributors view that Sky Angel distribution methodology as having triggered [Most Favored Nation] obligations in their own Agreements.

38.    Discovery and Animal Planet also admitted that in their view, Section 12.1 was "a provision that allows Discovery to terminate at any time during the agreement, at Discovery's sole discretion, with no showing of fault or changed circumstances needed, and with no opportunity to cure required, if Discovery is not comfortable with the distribution system Sky Angel is using."

39.    On April 22, 2010, Discovery and Animal Planet severed their programming connections with Sky Angel.

40.    Sky Angel has suffered substantial business losses as a result of the improper and early termination of the Agreement by Discovery and Animal Planet.   These losses include but are not limited to:

a)    Following the breach, Sky Angel incurred substantial costs associated with altering its programming, the content of programming menus and guides, and the content of website and other promotional materials to reflect the loss of the Discovery and Animal Planet channels.

b)    Sky Angel has lost many subscribers as a result of the early termination and reasonably estimates that its lost revenue for these subscribers exceeds $500,000 to date and will exceed $1,000,000 by December 31, 2014 (the expiration date set forth in the Agreement).

c)    Sky Angel has also lost future subscribers and programmers such that Defendants' breach significantly hindered Sky Angel's business development and growth, causing Sky Angel to lose future profits which could have been reasonably foreseen by Defendants.

10

41.    As a result of Defendants' termination, Sky Angel has incurred substantial business losses in an amount to be shown at trial but estimated to be not less than the jurisdictional requirement of $75,000.

42.    Although Sky Angel's damages will be proven to a certainty at trial, no award of money damages would provide Sky Angel with adequate relief from Defendants' breach of the Agreement.

43.    The Agreement provides for Sky Angel's right to distribute and exhibit several family-friendly programming channels that are essential to Sky Angel's competitiveness.  Sky Angel cannot effectively compete in the market for family-oriented multichannel video distribution services without the right to distribute and exhibit the several family-friendly programming channels as provided in the Agreement.

44.    Sky Angel was unjustly deprived of its ability to exhibit the programming channels contracted for in the Agreement upon Defendants' improper termination of the Agreement and severance of their programming connections with Sky Angel, and the ends of justice therefore require that Sky Angel retain the right to distribute the programming channels contracted for in the Agreement and that its programming connections with Discovery and Animal Planet be restored.

45.    The parties' obligations under the Agreement are clear and definite, and present no practical difficulties.  Restoration of Discovery's and Animal Planet's programming connections with Sky Angel presents no practical difficulties for Discovery or Animal Planet.

46.    Sky Angel remains able and willing to perform its obligations under the Agreement.

## COUNT I
### Breach of Contract - Discovery Communications, LLC

47.    Paragraphs 1 through 46 are incorporated herein by reference.

11

48.     The Agreement between Sky Angel and Discovery constituted a valid, binding, and enforceable contract with a term that ran for a period of approximately seven years.

49.     By executing the Agreement, Discovery agreed to specific instances when the Agreement could be terminated.

50.     The Agreement did not permit Discovery to terminate the Agreement at any time without cause.  Instead, Discovery would have needed to make a determination that the "distribution methodology" – which is clearly articulated in the agreement – was not satisfactory.

51.     In the Agreement, the parties set forth their understanding and expectation of what constituted a satisfactory distribution methodology for the IP system for which the parties contracted. For example, in Section 7.1, the parties agreed:

a)     Each Service must be distributed in its entirety, without delay, interruption, alteration, addition, deletion, or editing;

b)     Each Service must be distributed in a manner which will permit highest quality reception;

c)     Sky Angel must maintain suitable facilities for the pick-up and retransmission of the Service signals;

d)     Distribution will be made in digital format;

e)     Sky Angel's own services would be provided in the same format and using the same technology as the Services; and

f)     Sky Angel must encrypt each of the Service signals or use a substantially similar method of security to secure the Service signals.

52.     In terminating the Agreement, Discovery asserted that the distribution methodology used by Sky Angel was not satisfactory.

53. Upon information and belief, Discovery never made such a determination that the distribution methodology as defined in the Agreement was not satisfactory and nor could Discovery have made such a determination.

54. Sky Angel's distribution methodology fully and objectively met the understanding and expectation of the parties and the contractual specifications.

55. Implicit in its contractual obligations, Discovery also agreed to act in good faith and with fair dealing.

56. Discovery terminated the Agreement claiming dissatisfaction with Sky Angel's distribution methodology.

57. At no time did Discovery provide Sky Angel with any opportunity to resolve any concerns Discovery may have had or otherwise make any good faith efforts as required under the Agreement.

58. Upon information and belief, Discovery terminated the Agreement for other reasons including Discovery's extra-contractual legal and business concerns about maintaining the contract with Sky Angel. This rationale was not sufficient under the Agreement and thus constituted an unauthorized, improper termination.

59. By improperly terminating the Agreement, Discovery materially breached the Agreement.

60. In doing so and without allowing Sky Angel a chance to resolve any purported problems, Discovery also breached the covenant of good faith and fair dealing that is inherent in the Agreement.

61. As a result of the improper termination, Sky Angel has been injured.

62.    By terminating the contract approximately four and a half years early, Discovery caused Sky Angel to suffer substantial business losses and deprived Sky Angel of its ability to compete in the market for family-oriented multichannel video distribution services.

**COUNT II**
**Breach of Contract - Animal Planet, L.L.C.**

63.    Paragraphs 1 through 46 are incorporated herein by reference.

64.    The Agreement between Sky Angel and Animal Planet constituted a valid, binding, and enforceable contract with a term that ran for a period of approximately seven years.

65.    By executing the Agreement, Animal Planet agreed to specific instances when the Agreement could be terminated.

66.    The Agreement did not permit Animal Planet to terminate the Agreement at any time without cause. Instead, Animal Planet would have needed to make a determination that the "distribution methodology" – which is clearly articulated in the agreement – was not satisfactory.

67.    In the Agreement, the parties set forth their understanding and expectation of what constituted a satisfactory distribution methodology for the IP system for which the parties contracted. For example, in Section 7.1, the parties agreed:

a)    Each Service must be distributed in its entirety, without delay, interruption, alteration, addition, deletion, or editing;

b)    Each Service must be distributed in a manner which will permit highest quality reception;

c)    Sky Angel must maintain suitable facilities for the pick-up and retransmission of the Service signals;

d)    Distribution will be made in digital format;

e)    Sky Angel's own services would be provided in the same format and using the same technology as the Services; and

14

f)      Sky Angel must encrypt each of the Service signals or use a substantially similar method of security to secure the Service signals.

68.     In terminating the Agreement, Animal Planet asserted that the distribution methodology used by Sky Angel was not satisfactory.

69.     Upon information and belief, Animal Planet never made such a determination that the distribution methodology as defined in the Agreement was not satisfactory and nor could Animal Planet have made such a determination.

70.     Sky Angel's distribution methodology fully and objectively met the understanding and expectation of the parties and the contractual specifications.

71.     Implicit in its contractual obligations, Animal Planet also agreed to act in good faith and with fair dealing.

72.     Animal Planet terminated the Agreement claiming dissatisfaction with Sky Angel's distribution methodology.

73.     At no time did Animal Planet provide Sky Angel with any opportunity to resolve any concerns Animal Planet may have had or otherwise make any good faith efforts as required under the Agreement.

74.     Upon information and belief, Animal Planet terminated the Agreement for other reasons including Animal Planet's extra-contractual legal and business concerns about maintaining the contract with Sky Angel.   This rationale was not sufficient under the Agreement and thus constituted an unauthorized, improper termination.

75.     By improperly terminating the Agreement, Animal Planet materially breached the Agreement.

15

76.     In doing so and without allowing Sky Angel a chance to resolve any purported problems, Animal Planet also breached the covenant of good faith and fair dealing that is inherent in the Agreement.

77.     As a result of the improper termination, Sky Angel has been injured.

78.     By terminating the contract approximately four and a half years early, Animal Planet caused Sky Angel to suffer substantial business losses and deprived Sky Angel of its ability to compete in the market for family-oriented multichannel video distribution services.

**WHEREFORE,** Sky Angel requests that the Court

(i)     Order specific performance of the Affiliation Agreement, including an injunction ordering Discovery and Animal Planet to restore Sky Angel's access to signals for the five programming channels currently or previously known as Discovery Channel, Discovery Kids Channel, Discovery Home Channel, Military Channel, and Animal Planet, for the full duration of time originally agreed to under the Affiliation Agreement;

(ii)    Award Sky Angel damages in an amount to be determined at trial but estimated to be not less than $1,000,000; and/or

(ii)    Award Plaintiff any other relief that the Court determines is appropriate.

January 3, 2012

Respectfully Submitted,

HOLLAND & KNIGHT LLP

Lynn E. Calkins, Bar No. 12121
Cheryl Feeley, Bar No. 28862
800 17th Street, N.W., Suite 1100
Washington, DC 20006
Phone: (202) 955-3000
Fax:    (202) 955-5564
Email: lynn.calkins@hklaw.com
Email: cheryl.feeley@hklaw.com

*Counsel for Sky Angel U.S., LLC*

#11875439_v5

17