**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
Southern Division**

|  |  |
|---|---|
| **SKY ANGEL U.S., LLC,** | ) |
|  | ) |
|  Plaintiff, | ) |
|  | ) |
| v. | ) **Case No.: 8:13-cv-00031-DKC** |
|  | ) |
| **DISCOVERY COMMUNICATIONS, LLC, and** | ) |
| **ANIMAL PLANET, LLC,** | ) |
|  | ) |
|  Defendants. | ) |
|  | ) |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Sky Angel U.S., LLC ("Sky Angel") seeks to convert Defendants Discovery Communications, LLC's and Animal Planet, LLC's (collectively "Discovery" or "Defendants") exercise of a clear and unambiguous contractual right into an unnecessary and protracted lawsuit.

Discovery is a non-fiction media company headquartered in Silver Spring, Maryland, and has a number of worldwide television networks, including Discovery Channel, Animal Planet, Science, and Investigation Discovery. The content on Discovery's networks is sometimes produced and owned by Discovery, and sometimes licensed from other entities. Sky Angel describes itself as a subscription-based video programming distribution service that provides "family-oriented" video programming.

In October 2007, Sky Angel entered into an agreement with Discovery for a non-exclusive license and right to distribute some of Discovery's channels.  As part of the parties' agreement, Discovery negotiated, and Sky Angel agreed to, a specific and tailored contractual provision providing Discovery with an unfettered right to terminate the parties' agreement at any time that Discovery became dissatisfied with Sky Angel's distribution method.  This provision clearly authorizes Discovery to terminate the agreement.

After learning that Sky Angel's service is a multi-location, entirely portable offering accessible anywhere by any Sky Angel customer with access to a broadband Internet connection – which was contrary to Discovery's understanding of the technology employed by Sky Angel – Discovery exercised its clear and unfettered right to terminate the parties' agreement in January 2010.

Following Discovery's termination of the agreement, Sky Angel lodged a complaint with the Federal Communications Commission against Discovery.  The FCC proceeding is still pending.  Having apparently grown impatient with the FCC, Sky Angel initiated the instant action accusing Discovery of breaching the parties' agreement.

As set forth herein, the pleadings in this case, even if viewed with all reasonable inferences, lead to the inescapable conclusion that Sky Angel has no viable claim against Discovery.  Indeed, Sky Angel's Complaint establishes that Discovery fully complied with the contract's termination provision.  That provision – which was bargained for and accepted by both parties – cannot now form the basis of a claim for relief.  The Complaint, therefore, should be dismissed, with judgment on the pleadings granted to Discovery.

**STATEMENT OF FACTS**

Sky Angel describes itself as a subscription-based video programming distribution service that provides "family-oriented" video programming.  *See* Compl. ¶ 7.[1]  Further, Sky Angel alleges that it receives its programming from content partners based upon individually negotiated agreements.  *Id.* ¶ 8.

Discovery is a media company headquartered in Silver Spring, Maryland.  Discovery has a number of worldwide television networks, including Discovery Channel and Animal Planet.  *Id.* ¶¶ 2-3.

In October 2007, Sky Angel entered into an "Affiliation Agreement" dated October 3, 2007 (the "Agreement") with Discovery.  *Id.* ¶ 12; *see also* Compl., Ex. 1.  The parties' Agreement, governed by Maryland law, is fully integrated and, along with the accompanying exhibits, "constitute[s] the entire agreement between the parties."  *See* Compl., Ex. 1 at §§ 13.5, 13.8.  Pursuant to the Agreement, Discovery (identified as "NETWORK" in the Agreement) agreed to provide Sky Angel (identified as "Affiliate" in the Agreement) with a "non-exclusive license and right to distribute and exhibit five programming channels" on Sky Angel's "Affiliate System."  Compl. ¶ 14.  In exchange for the license and right to distribute Discovery's networks, Sky Angel agreed to pay certain monthly license fees to Discovery on a per-subscriber basis.  *Id.* ¶ 18; *see also* Compl., Ex. 1.

The Agreement, which was fully negotiated and executed by both parties, contains a provision entitled "Default and Termination" that includes the following subsection:

> 12.1    Due and timely performance by Affiliate is of the essence hereof.  If Affiliate defaults in the (a) making of any payments hereunder or (b) performance

---

[1] The facts alleged by Sky Angel in its Complaint are taken as true for purposes of this Motion only.

of any of its material obligations hereunder, including its obligations to maintain the security of a Service signal which failure to maintain the security of the signal results in a theft of such Service in an amount equal to or greater than ten percent (10%) of Affiliate's then current base of Subscribers, and such default shall not be cured within five (5) days after written notice thereof to Affiliate, or if Affiliate becomes insolvent, or if a petition under any bankruptcy act shall be filed by or against Affiliate (which petition, if filed against Affiliate, shall not have been dismissed within thirty (30) days thereafter), or if Affiliate executes an assignment for the benefit of creditors, or if a receiver is appointed for the assets of Affiliate, or if Affiliate takes advantage of any insolvency or any other like statute (any of the above acts are hereinafter called "Event of Default), then NETWORK may, in addition to any and all other rights which NETWORK may have against Affiliate, terminate this Agreement by giving written notice to Affiliate at any time after the occurrence of an Event of Default. Affiliate shall, nevertheless, remain liable for all moneys due or to become due to NETWORK pursuant hereto, and shall be liable for all costs and expenses of collection, including reasonable collection agency fees, attorneys' fees, and court fees Incurred by NETWORK in exercising its rights hereunder. *Notwithstanding anything to the contrary herein, in the event NETWORK determines that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of Affiliate are not satisfactory, NETWORK shall have the right to terminate this Agreement.*

*See* Compl., Ex. 1 at § 12.1 (emphasis added).

By letter dated January 22, 2010, Discovery notified Sky Angel that Discovery would be terminating the Agreement.  Compl. ¶ 30.  More specifically, Discovery notified Sky Angel that:

We have determined that the distribution methodology used by and on behalf of Affiliate is not satisfactory.  Accordingly, pursuant to Section 12.1 of the Agreement, we hereby elect to terminate the Agreement.  In order to provide for an orderly transition process, including notification to your subscribers, we will provide you with a three (3) month transition period; accordingly, the Agreement will terminate effective April 22, 2010.

*Id.* ¶ 31.

Subsequently, on March 24, 2010, Sky Angel filed a Program Access Complaint and Emergency Petition for Temporary Standstill with the Federal Communications Commission ("FCC Complaint").  *Id.* ¶ 36.  The gravamen of Sky Angel's FCC Complaint is that in terminating the parties' Agreement Discovery unlawfully denied Sky Angel access to its

4

programming in violation of the FCC's rules intended to promote competitive access to non-broadcast programming.  The FCC denied Sky Angel's request for a temporary standstill of the parties Agreement pending resolution of the FCC Complaint.  The FCC Complaint, however, is still pending.  Apparently dissatisfied with the pace of the FCC action, Sky Angel instituted this action.[2]

## ARGUMENT

The contractual interpretation Sky Angel relies upon to allege that Discovery wrongfully terminated the Agreement is clearly inconsistent with the plain meaning of the contract and thus cannot provide a basis upon which the asserted breach of contract claim may proceed.  Whether Discovery breached the Agreement by terminating the Agreement hinges upon  interpretation of the termination provision, which is a question of law to be decided by the court.  *See Myers v. Kayhoe*, 892 A.2d 520, 526 (Md. 2006) (holding the interpretation of a contract, including whether the language is ambiguous, is a question of law); *see also Suburban Hosp. v. Dwiggins*, 596 A.2d 1069 (Md. 1991).

Under these circumstances, a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is warranted.  *See* FED. R. CIV. P. 12(c) (setting forth that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial"); *Geoghegan v. Grant,* No. DKC 10-1137, 2011 WL 673779, at *3 (D. Md. Feb. 17, 2011) ("Motions on the pleadings can be used  . . . where the parties' only dispute is the proper interpretation of contractual terms.")  (Chasanow, J.).  In *Geoghegan v. Grant*, this Court addressed a dispute resting upon contractual interpretation in the context of a plaintiff's motion

---

[2] Sky Angel filed a writ of mandamus with the United States Court of Appeals for the District of Columbia Circuit.  The D.C. Circuit denied Sky Angel's writ.

for judgment on the pleadings[3] and stated that a "defense of failure to state a claim" advanced pursuant to a Rule 12(c) motion follows the same standard as a Rule 12(b)(6) motion. *See* 2011 WL 673779, at *3. There, this Court interpreted the obligations upon the parties based upon the operative settlement agreement and determined whether either party could recover for breach of contract. *See id.* at *9-10; *see also Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 805 F. Supp. 2d 213 (E.D. Va. 2011) (granting judgment on the pleadings after interpreting an insurance policy and determining the operative clause allowed for plaintiff's sought recovery).

For Sky Angel to survive this motion for judgment on the pleadings, therefore, its "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" so that the Court is able to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009) (setting forth the Rule 12(b)(6) standard) (internal quotation marks omitted); *see also Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (qualifying that a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" or "allegations that contradict matters properly subject to judicial notice or by exhibit"). Sky Angel's Complaint simply fails this test and therefore should be dismissed.

**I.      The Plain Language of the Agreement Bars Sky Angel's Claim**

Sky Angel and Discovery are sophisticated parties in the business of negotiating licensing and distribution agreements. Sky Angel attempts to circumvent and modify the plain language of

---

[3] In *Geoghegan*, the defendant also moved for partial summary judgment. The Court noted that the distinction between the two motions was whether the Court may consider facts outside the pleadings. 2011 WL 673779, at *3-4. For a Rule 12(c) motion, the court is confined to the pleadings. *Id.*

Here, the Agreement is an exhibit to Sky Angel's Complaint and thus properly may be considered as part of this motion. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *see also Demetry v. Lasko Prods., Inc.,* 284 F. App'x 14, 15 (4th Cir. 2008) (finding the district court's consideration of documents attached to the complaint proper in regards to a Rule 12(c) motion).

the termination clause in total disregard of the integration clause.  This Court should not allow Sky Angel to interpret the termination provision in a way that inserts or alters the Agreement from how it was negotiated and bargained for.  Rather, Discovery requests that this Court hold as a matter of law, based upon the plain meaning of the Agreement, that the Agreement permitted Discovery to terminate in the manner alleged.

In interpreting the Agreement, specifically the termination provision, the court must restrict its inquiry to the four corners of the document and "ascribe to the contract's language its 'customary, ordinary, and accepted meaning.'"  *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010) (quoting *Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 199 (Md. 2001)); *see also Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008).  Section 12.1 of the Agreement sets forth two categories of permissible termination:  (1) an "Event in Default" and (2) upon Discovery's determination that Sky Angel's signal integrity, signal security measures, or distribution methodology used was not satisfactory.  In addition to the multiple circumstances qualifying as an Event in Default, the last sentence of Section 12.1 explicitly grants Discovery "the right to terminate this Agreement" if Discovery determines that it is dissatisfied with Sky Angel's signal integrity, signal security measures, or distribution methodology.  *Id.*

The language of the termination provision is not ambiguous[4] and requires no construction. *See Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999) (maintaining there is "no room for construction" of an unambiguous contract because the parties are presumed to have intended

---

[4] A court's conclusion that a contract is ambiguous may not be based upon the possibility that one might interpret the contract a particular way.  Rather, a determination of ambiguity must be based upon substantial evidence.  *See Post v. Bregman*, 686 A.2d 665, 773 (Md. Ct. Spec. App. 1996), *rev'd on other grounds*, A.2d 806 (Md. 1998).

what they expressed) (quoting *General Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985)).  Notably, the last sentence expresses a right of termination without qualification or added condition beyond Discovery's determination of dissatisfaction: "Notwithstanding anything to the contrary herein, in the event NETWORK determines that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of Affiliate are not satisfactory, NETWORK shall have the right to terminate this Agreement."  Compl., Ex. 1 at § 12.1.

Even if the Court were to interpret the Agreement, an objective interpretation of the termination provision allowed for Discovery to terminate as alleged.  Regardless of Sky Angel's intentions as to the meaning of this sentence at the time of contracting, the plain meaning, as determined by a reasonable person, governs.  *See Nova Research,* 952 A.2d at 283; *accord Calomiris*, 727 A.2d at 363 (describing the court's task in applying Maryland's objective interpretation of contracts as to "determine from the language of the agreement itself what a *reasonable* person in the position of the parties would have meant at the time it was effectuated") (emphasis added).  At the outset, the phrase "notwithstanding anything to the contrary herein" makes clear that this right of termination is distinct from the prior sentences in Section 12.1 relating to an Event in Default.  Unlike the circumstances described within the Event for Default category, termination based upon Discovery's determination of dissatisfaction does not require written notice or a time period to cure the determination.  Such conditions or limitations upon the right to terminate are simply not present.  Rather, the only condition necessary for Discovery's

8

right of termination to be applicable is if *Discovery* makes a determination that an enumerated aspect of Sky Angel's service is not satisfactory.[5]

The making of that determination rests solely with Discovery under the plain meaning of this sentence because a "determination" is commonly understood to be a conclusion or decision that a person or organization may reach of its own accord.  *See* The Oxford English Dictionary 548-49 (vol. IV) (2d ed. 1989) (defining "determination" as an "action of definitely ascertaining the position, nature, amount, etc. (of anything)" or a "mental action of coming to a decision; the fixing or settling of a purpose; the result of this; a fixed purpose or intention"); Webster's Third New International Dictionary 616 (1961) (defining it as "the act of deciding definitely and firmly esp. regarding a course of action").  Therefore, the plain and reasonable interpretation of the right to terminate for dissatisfaction does not impose any obligations upon Discovery to confer or attempt to negotiate a remedy with Sky Angel because there is no language in the last sentence of Section 12.1 setting forth such obligations.

In light of this plain meaning, the pleadings in this action provide ample facts that Discovery complied with the contractual terms when it terminated the Agreement.  The alleged initial notice of termination explicitly stated to Sky Angel that Discovery had made a specific determination regarding one of the enumerated aspects of the service that allowed for termination.  *See* Compl. ¶ 31 ("We have determined that the distribution methodology used by and on behalf of Affiliate is not satisfactory.").  Further, according to the Complaint, Discovery later elaborated on its determination, noting that it concluded the distribution methodology presented a substantial legal risk regarding Discovery's licensors and serious business risk with

---

[5] Despite no obligation to do so, Discovery provided written notice of termination and granted, of its own accord, a three month transition period to Sky Angel before the termination would be effected.

distributors.  Compl. ¶ 37.  Therefore, based upon the pleadings, Sky Angel has alleged facts that demonstrate compliance with, rather than breach of, the Agreement.[6]

**II.     Sky Angel's Attempt to Circumvent the Plain Meaning of the Termination Clause is Meritless**

Sky Angel advances two breach of contract theories in its attempt to allege Discovery's termination was somehow wrongful.  Each of these theories is inconsistent with the plain meaning of the Agreement and thus fails.

First, Sky Angel argues that Section 7.1 sets forth what constitutes a satisfactory distribution methodology, and therefore, unless the contractual specifications of Section 7.1 were violated, there could be no determination by Discovery of dissatisfaction.  *See* Compl. ¶¶ 51-54; 67-70.  Additionally, Sky Angel complains about having no opportunity to cure.  *Id.* ¶¶ 57, 73.  The error in Sky Angel's interpretation of the termination provision is that Sky Angel is attempting to force Discovery's exercise of the second category of permissible termination into the first category.  To condition Discovery's right to terminate upon both a violation of a performance obligation (*e.g.*, Section 7.1) and an opportunity to cure only gives effect to the Event in Default category of termination and renders the second category superfluous.  Such an interpretation is disfavored by courts.  *See JMP Associates, Inc. v. St. Paul Fire & Marine Ins. Co.*, 693 A.2d 832, 834 (Md. 1997) (reciting precedent that the court must give distinct meaning to every word of a contract if it can).  The second category for permissible termination should be read as drafted and not subjected to the requirements set forth for a separate, independent basis

---

[6] Sky Angel attempts to refute the facts within its own Complaint that establish Discovery's termination was not in breach of the Agreement by simply making unsupported assertions to the contrary.  *See* Compl. ¶ 53 ("Upon information and belief, Discovery never made such a determination that the distribution methodology as defined in the Agreement was not satisfactory . . . ."); *id.* ¶ 74 (same regarding Animal Planet).  These are the types of "bare assertions" that *Iqbal* directs a court to disregard as not being entitled to an assumption of truth.  *See* 556 U.S. at 680-81.

for termination.  Discovery exercised its termination rights based upon the second category; Sky Angel may not now base its allegations of breach upon conditions or obligations that were not negotiated and bargained for.

Second, Sky Angel argues that Discovery "terminated the Agreement for other reasons including  . . . extra-contractual legal and business concerns about maintaining the contract with Sky Angel."  Compl. ¶¶ 58, 74.  This theory of breach easily fails as there is no limitation upon Discovery's "reason" for its determination that the distribution methodology was not satisfactory. Again, Sky Angel is expecting this Court to read in limitations upon Discovery's right of termination that do not exist.

### CONCLUSION

For the foregoing reasons, Discovery respectfully requests that the Court grant this motion and enter an Order granting Defendants judgment on the pleadings.

Dated:  March 1, 2013                             Respectfully submitted,


           /s/ Anthony T. Pierce
Anthony T. Pierce, Bar No. 13321
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036
Tel:  (202) 887-4000
Fax:  (202) 887-4288
apierce@akingump.com

*Counsel for Defendants Discovery Communications,
LLC and Animal Planet, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2013, I electronically filed the foregoing Defendants'

Memorandum of Points and Authorities in Support of their Motion for Judgment on the

Pleadings with the Clerk of the Court for the U.S. District Court for the District of Maryland,

using the Court's CM/ECF system.  The CM/ECF system sent a "Notice of Electronic Filing" to

all counsel of record who have entered an appearance in this matter.


       /s/ Anthony T. Pierce
Anthony T. Pierce, Bar No. 13321
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036
Tel:  (202) 887-4000
Fax:  (202) 887-4288
apierce@akingump.com

*Counsel for Defendants Discovery Communications,
LLC and Animal Planet, LLC*