**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

|  |  |  |
|---|---|---|
| **SKY ANGEL U.S., LLC,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 8:13-cv-00031-DKC** |
| **DISCOVERY COMMUNICATIONS, LLC,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| *Defendants* | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFNDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Sky Angel U.S., LLC ("Sky Angel") hereby submits its Opposition to Defendants' Motion for Judgment on the Pleadings (Dkt. Nos. 25 (redacted) & 28 (unredacted)).

## I.    INTRODUCTION

In its Complaint, Sky Angel set forth its well-pled claims that Defendants Discovery Communications, LLC and Animal Planet, LLC (collectively, "Discovery") improperly terminated the express and implicit terms of a binding Affiliation Agreement ("Agreement"). Despite those well-pled allegations and the governing law precluding Discovery's termination of the Agreement, Discovery asserts it is entitled to judgment on the face of the Complaint, because it reads the contract and law to allow Discovery "unfettered" discretion to sever the Agreement if it used the right wording in doing so. Unfortunately for Discovery, this position is not supported by the face of the Agreement, is wrong as a matter of Maryland law, and actually *bolsters* Sky Angel's claim that Discovery improperly breached the Agreement. As explained herein, Sky Angel's Complaint goes well beyond the requirements for

pleading of breach of contract in Maryland, and judgment is not warranted at this early stage of the litigation.

## II.      SUMMARY OF THE COMPLAINT'S FACTUAL ALLEGATIONS

Sky Angel and Discovery entered into the "Affiliation Agreement" dated October 3, 2007 ("Agreement"), which is attached at Tab 1 to the Complaint.  (*See* Dkt. No. 5, Notice of Filing Under Seal, Ex. A, at Compl. ¶ 12.)  In the Agreement, Discovery agreed to provide to Sky Angel a non-exclusive license and right to distribute and exhibit five programming channels on Sky Angel's "Affiliate System."  (Compl. ¶ 14.)  The Agreement provides that the "Affiliate System" may be an "IP System," which is defined in the Agreement and explained in the Complaint.   (Compl. ¶¶ 8, 16.)

Section 7 of the Agreement, entitled "Distribution of the Services by Affiliate," sets forth the terms controlling the distribution of Discovery's services by Sky Angel.  (Compl. ¶ 17.)   In Section 7.1, the parties specified distribution of services as follows:

a)      Each Service must be distributed in its entirety, without delay, interruption, alteration, addition, deletion, or editing;

b)      Each Service must be distributed in a manner which will permit highest quality reception;

c)      Sky Angel must maintain suitable facilities for the pick-up and retransmission of the Service signals;

d)      Distribution will be made in digital format;

e)      Sky Angel's own services would be provided in the same format and using the same technology as the Services; and

f)      Sky Angel must encrypt each of the Service signals or use a substantially similar method of security to secure the Service signals.

(Compl. ¶¶ 51, 67.)

In exchange for the license and right to distribute the services, Sky Angel agreed to pay monthly license fees to Discovery on per-subscriber basis.  (Comp. ¶ 18.)  The parties agreed that the term of the Agreement would commence upon October 3, 2007, and would expire on December 31, 2014.  (Compl. ¶ 22.)

During the time of contract performance, Discovery never complained about *__any__* aspect of Sky Angel's performance or distribution methodology, including the security or integrity of Sky Angel's system.  (Compl. ¶ 26.)  During the time of contract performance, there had been no change in the Sky Angel distribution methodology.  (Compl. ¶ 28.)   Indeed, approximately two years after entering into the Agreement, Discovery urged Sky Angel to add another channel to the Sky Angel lineup subject to the monthly payment of additional per-subscriber fees and to commit to adding more Discovery programming channels as the Sky Angel system grew.  (Compl. ¶ 29.)

By letter dated January 22, 2010, Discovery notified Sky Angel that it would be terminating the Agreement effective on April 22, 2010.  (Compl. ¶ 30.)  In this letter, Discovery asserted that the "distribution methodology used by and on behalf of [Sky Angel] is not satisfactory" and cited Section 12.1 of the Agreement.  (Compl. ¶ 31).

Following the receipt of that letter, Sky Angel challenged Discovery's assertion that the "distribution methodology" is not "satisfactory."  (Compl. ¶ 32.)  Sky Angel also "offer[ed] its full cooperation to Discovery to provide it with all reasonable assurances that Sky Angel's distribution methodology is satisfactory so that the Affiliation Agreement may continue."  (Compl. ¶ 33.)

Discovery and Animal Planet responded but offered no other detail regarding the alleged dissatisfaction with the distribution methodology.  (Compl. ¶ 35.)  Ultimately, Discovery explained that it terminated the Affiliation Agreement because, after two years operating under the Agreement,

Discovery concluded it was facing a legal risk, business risk, and financial risk by having entered and operating under the terms of the Agreement.   (Compl. ¶ 37.)   Specifically, Discovery expressed concern that it "could face additional and substantial legal, business and financial risks if any of *its distributors view* the Sky Angel distribution methodology as having triggered [Most Favored Nation] obligations in their own Agreements."  (*Id.* (emphasis added).)

In order to justify its business decision to terminate the Agreement, Discovery took the position that Section 12.1 was "a provision that allows Discovery to terminate at any time during the agreement, at Discovery's sole discretion, with no showing of fault or changed circumstances needed, and with no opportunity to cure required, if Discovery is not comfortable with the distribution system Sky Angel is using." (Compl. ¶ 38.)

Based upon that new reading of the contract in light of concerns Discovery feared about its other distributors, on April 22, 2010, in violation of the terms of the Agreement and governing Maryland law, Discovery severed their programming connections with Sky Angel.  (Compl. ¶ 39.)   As articulated in the Complaint, Sky Angel has suffered substantial business losses as a result of the improper and early termination of the Agreement by Discovery.  (Compl. ¶ 40.)

## III.   LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings for failure to state a claim for relief is assessed under the same standard as the well-understood Rule 12(b)(6) motion to dismiss.  *Walter v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  To survive a motion to dismiss—or in this case, a motion for judgment on the pleadings—a "complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 556, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The sole purpose of such a motion is to test the sufficiency of a complaint; it is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244-45 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Such motions "should be granted only in very limited circumstances." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In assessing Discovery's Motion, the Court "'must accept as true all of the factual allegations contained in the complaint.'" *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)).[1]

## IV.   ARGUMENT

To state a claim for breach of contract under Maryland law, Sky Angel "must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 791 (D. Md. 2002) (citing *Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc.,* 369 A.2d 566 (Md. 1977)).

---

[1] In its Motion, Discovery cites to purported facts outside the Complaint's factual allegations. Discovery asserts that it terminated the Agreement "[a]fter learning that Sky Angel's service is a multi-location, entirely portable offering accessible anywhere by any Sky Angel customer with access to a broadband Internet connection – which was contrary to Discovery's understanding of the technology employed by Sky Angel." (Mot. 2.) This assertion is outside the Complaint, must not be considered at this stage, and will be disproved through factual discovery. Relevant to the Motion at hand and contrary to Discovery's assertion, the allegations in the Complaint support an inference that Discovery *did not* "learn" anything that would have caused it to make a determination that the distribution methodology was unsatisfactory. Sky Angel alleges that Discovery was aware of Sky Angel's IP "distribution methodology" when the contract was executed (*see* Compl. ¶ 16) and that the distribution methodology did not change during the time of contract performance (*see* Compl. ¶ 28). Discovery's suggestion that Sky Angel brought its claims before this Court because it was "dissatisfied with the pace of the FCC action" (Mot. 5) should similarly not be factored into the Court's analysis. Again, the assertion is outside of the Complaint, and it is of no relevance why Sky Angel brought its claims when it did so long as it has properly stated a claim, as it has.

Sky Angel alleges that Discovery was contractually obligated to continue providing it with programming and that it breached the Agreement by improperly terminating it.  Discovery argues that there can be no breach of any obligation because the Agreement permitted Discovery to terminate the contract in the manner it did.  According to Discovery's Motion, Discovery could terminate if, at any point in time, it became dissatisfied with any aspect of Sky Angel's service enumerated in the termination provision. (Mot. 8-9.)  As Discovery's simplistic argument goes, because Discovery cited as its basis for termination the language from the termination provision, it therefore properly terminated, and there can be no breach.

Discovery's position is belied by the face of the Agreement and well-established rules of contract interpretation, and the legal analysis that flows from its interpretation is inherently flawed.  Discovery did not have an "unfettered right" to walk away from the Agreement if Discovery was no longer "comfortable" with the agreed-to distribution methodology.  Instead, the plain language of the termination provision required a determination by Discovery that Sky Angel's performance of the agreed-to distribution methodology was not "satisfactory."  As a matter of law, this determination must have been *objectively reasonable*—and could not have been based on Discovery's post-hoc subjective dissatisfaction with the existence of the contractual arrangement itself.   Even to the extent that some level of discretion was afforded to Discovery, Discovery was required to act in good faith and deal fairly with Sky Angel.  Sky Angel has properly set forth allegations supporting its claim that Discovery did not act in good faith or deal fairly with Sky Angel.  Discovery's Motion must be denied.

### A.     Discovery Did Not Have An Unfettered Right To Terminate The Agreement.

Under the objective approach to contract interpretation, a court must not consider the subjective interpretations and intent of the parties but must "look at what a reasonably prudent person in the same

position would have understood as to the meaning of the agreement." *Cochran v. Norkunas*, 919 A.2d 700, 710 (Md. 2007) (citation omitted). Accordingly, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.*

> Courts are also to favor constructions that give meaning to all provisions in a contract:
>
> It is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions, must be given meaning, and force and effect, if that can consistently and reasonably be done. An interpretation which gives reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. So far as reasonably possible, effect will be given to all the language and to every word, expression, phrase, and clause of the agreement. No word or clause should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. A construction will not be given to one part of a contract which will annul another part, unless such a result is fairly inescapable.

*See JMP Assocs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 693 A. 2d 832, 834-35 (Md. 1997) (internal quotations omitted).

The arguments asserted by Discovery do not comport with an objective approach to contract interpretation. In its Motion, Discovery repeatedly states its position that the Agreement provided it with "an unfettered right" or a "clear and unfettered right" to terminate the parties' Agreement "at any time that Discovery became dissatisfied with Sky Angel's distribution method." (Mot. 2.) Discovery contends that this purported right was "without qualification or added condition beyond Discovery's determination of dissatisfaction" (Mot. 8) and that "there is no limitation upon Discovery's 'reason' for its determination that the distribution methodology was not satisfactory" (Mot. 11).

An objective reading of the Agreement which gives meaning to all of the provisions precludes such a finding. Indeed, the plain language of the Agreement bars an interpretation that Discovery had an unfettered right to terminate. Section 12.1 states in relevant part:

> Notwithstanding anything to the contrary herein, in the event NETWORK determines that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of Affiliate are not satisfactory, NETWORK shall have the right to terminate this Agreement.

(Compl. ¶ 19.)  On its face, the provision limits when Discovery could terminate, and the concept of "satisfaction" is tied to particular aspects of Sky Angel's performance being "not satisfactory." Discovery was only permitted to terminate if it made a determination that "the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of Affiliate are not satisfactory." (Compl., Tab 1 at § 12.1.)  Sky Angel disputes that such a determination was made or could have been made. (Compl. ¶¶ 53, 69.)

Contrary to Discovery's straw-man argument, the survival of Sky Angel's Complaint does not rest on a finding of contract ambiguity. (*Cf.* Mot. 7-8 (implying that Sky Angel's contract interpretation requires a finding of ambiguity).)  It is Discovery—not Sky Angel—who is seeking to insert terms and read in different meanings into the language of the Agreement.  The provision at issue does not say the termination right was "unfettered" or that Discovery was able to terminate "at any time" or "without condition or added qualification" or without "limitation."  Discovery asks the Court to read those words into the Agreement.  This Court should not do so.  Giving full effect to the other terms in the Agreement, it is clear that had Discovery intended to draft a termination right that would have allowed it to act in its sole discretion, it knew how to do so.  The very next paragraph of the Agreement, Section 12.2, includes the phrase "in its sole discretion" when describing a separate basis for termination. (Compl., Tab 1, § 12.2.)  Thus, the only construction of Section 12.1 that gives meaning to all of the other provisions in the Agreement is that the parties did *not* intend to provide an "unfettered right" to allow Discovery to terminate.

In addition, Discovery acknowledges that its stated basis for "dissatisfaction" stemmed from

8

legal and business risks resulting from how licensors and other distributors may perceive the parties' contractual relationship.   (*See* Compl. ¶ 37 & Mot. 9-10.)   Discovery then brazenly argues that Discovery could terminate based on a decision that it was not satisfied with the "distribution methodology" without regard for any actual measure of Sky Angel's performance of its obligation. (Mot. 9-11.)  By so arguing, Discovery wants this Court to find that Discovery was free to walk away from its contractual obligations at any point that it no longer wanted to be a party to the Agreement—so long as it merely invoked the magic words that it was no longer satisfied with Sky Angel's "distribution methodology."  Such an interpretation, however, would eliminate a term of the contract agreed to by the parties and would render the contract illusory as a matter of law—a result that is clearly disfavored under guiding principles of Maryland contract interpretation.   In contrast to Discovery's contention, under basic contract law principles, if a party may unilaterally terminate an agreement at any time without any rational grounds, then the party may choose to perform—or not perform—at its whim, and there is no contract at all.  *See Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 662 (Md. 2003).

While Discovery now claims that it has precisely this sort of unbridled right to unilaterally terminate the Agreement, this Court should not assume that the parties intended such a broad right.  *See Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009) (holding that "courts generally prefer a construction of a contract which will make the contract effective rather than one which will make it illusory or unenforceable") (internal punctuation and citation omitted); *Christian v. All Persons Claiming Any Right, Title or Interest in All Props. Known and Described As: All Props. Known as Newfound Bay*, 139 F. Supp. 2d 679, 686 (D.V.I. 2001) (finding that the parties "could not

have intended that [a provision requiring the parties' approval of a survey] would provide a party limitless personal discretion to withhold approval").[2]

### B. Discovery's Termination Based On Its Purported Dissatisfaction Must Be Reviewed Under An Objective Reasonableness Test.

Courts in Maryland, and in other jurisdictions, have applied two distinct standards when interpreting satisfaction provisions in contracts, depending on the nature of the agreement: a subjective test of good faith and an objective reasonableness test. *First Nat'l Realty Corp. v. Warren-Ehret Co.*, 233 A.2d 811, 814-15 (Md. 1967).

Courts assess determinations of satisfaction using a subjective standard only when the provision involves satisfaction with matters of personal taste or fancy, such as the execution of a portrait, where assessing the objective reasonableness of the determination is impracticable. *Questar Builders*, 978 A.2d at 675; *see also* Restatement (Second) of Contracts § 228 (1981). In these contexts, the applicable subjective standard requires simply that any "claim of dissatisfaction . . . be made in good faith[.]" *First Nat'l Realty*, 233 A.2d at 815.

Under the objective reasonableness test, the fact finder must determine whether, according to objective criteria, a reasonable person in the position of the party to be satisfied would have been satisfied. *Id.* The objective test is applied when the satisfaction clause at issue concerns "matters of mechanical fitness, utility or marketability," and is particularly applicable "when a definite objective test of satisfaction is available," such as in the terms of the particular contract. 13 Williston on Contracts § 38:24 (4th ed. 2000). In such contexts, even when considering contractual provisions which on their

---

[2] As discussed below, the exercise of contractual discretion based on a satisfaction provision is limited by the duty of good faith and fair dealing. *See, e.g.*, *Questar Builders*, 978 A.2d at 670; *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1267 (10th Cir. 1988). And, directly contrary to the argument asserted by Discovery, the exercise of judgment by the party to be satisfied must be in accordance with the duty of good faith and fair dealing or the agreement is illusory. Restatement (Second) of Contracts § 228 cmt. a (1981).

face suggest that one party has broad discretion to terminate the agreement, the Maryland Court of Appeals has applied the objective standard to determine whether the termination was reasonable or a breach.

For example, in the case of *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 675 (Md. 2009), the Maryland Court of Appeals applied the objective test of reasonableness to a contract dispute between a general contractor and its flooring subcontractor.  The subcontract provided that agreement would remain effective through the duration of the flooring project but permitted the general contractor to terminate the agreement for convenience.  *Id.* at 654.  The flooring subcontractor brought an action for breach, alleging that the contractor wrongfully terminated the subcontract.  *Id.* at 657.  In construing the contractor's "termination for convenience" right, the court reasoned that "personal taste [did] not provide the basis for the [contractor's] exercise of discretion," and therefore applied an objective standard.  *Id.* at 675.  In remanding the case for further proceedings before the trial court, the Court of Appeals held that the flooring subcontractor may prevail if the trial court found that the general contractor's termination of the subcontract "was not commercially reasonable under the circumstances[.]"  *Id.* at 676.

Similarly, in *First National Realty Corp. v. Warren-Ehret Co.*, 233 A.2d 811, 813 (Md. 1967), the Maryland Court of Appeals considered a provision in a subcontract between a primary contractor and a roofing subcontractor that gave the primary contractor the right to remove the roofer from the job "if 'in the opinion of the contractor, (the roofer) shall fail in any respect to prosecute the work with promptness, or cause by any action the stoppage of or interference with the work of other trades." Citing the roofer's "inadequate performance," the contractor removed the roofer from the job, and the roofer took legal action to recover payment for work done.  *Id.* at 812-13.  The trial court considered the

favorable results of inspections performed on the roof in concluding that the roofer "substantially performed his side of the contract, and therefore termination [by the primary contractor] was not legally warranted." *Id.* at 813.  In affirming the judgment in favor of the roofer, the Court of Appeals noted the roofer's "substantial performance and compliance with his contract" as evidence that the primary contractor "acted arbitrarily in . . . removing [the roofer] from the construction project and that such capricious action prevented [the primary contractor] from exercising in good faith its prerogative of termination in the event the work did not proceed to its satisfaction." *Id.* at 816.

An objective reasonableness standard is even more clearly applicable to the termination provision in this case, which, on its face, is not nearly as broad as those at issue in *Questar Builders* and *First National Realty*.[3]   The "distribution methodology"—*i.e.*, the method by which Sky Angel distributes Discovery's signal—is a matter of "mechanical fitness, utility [and] marketability."  (Compl. ¶ 31.)  The mechanical and commercial nature of Sky Angel's distribution methodology was clearly understood by the parties when they entered the Affiliation Agreement and was set forth on the face of the Agreement itself.  In Section 7, entitled "Distribution of the Services by Affiliate," for example, the parties agreed to the processes by which that distribution would be made.  These terms provide a definite, objective criteria of satisfaction that can be used in determining whether Sky Angel's distribution methodology was satisfactory and whether Discovery's claim of dissatisfaction was reasonable.  *See* Williston on Contracts § 38:24 (courts apply the objective standard when "a definite

---

[3] The contract in *Questar Builders* gave the general contractor a right to terminate the subcontractor for convenience, 978 A.2d at 675, and the contract in *First National Realty* permitted the primary contractor to terminate the roofer "if *in the opinion of the contractor*" the roofer's performance was inadequate, 233 A.2d 813.  The contractual termination right at issue here provides far narrower discretion, permitting termination only upon the determination that Sky Angel's "signal security integrity[,] . . . signal security measures or distribution methodology . . . are not satisfactory." (Compl., Tab 1 at § 12.1.)  This narrow provision leaves no room for Discovery's convenience or opinion—much less Discovery's personal taste or fancy. *See Questar Builders*, 978 A.2d at 670 (applying objective standard to termination provision where "personal taste does not provide the basis for the exercise of discretion").

objective test of satisfaction is available").  Therefore, the questions of whether Sky Angel's method of distribution was objectively satisfactory and whether Discovery's decision to terminate the Affiliation Agreement was justified can be readily assessed, and Discovery's argument that it was permitted to terminate based on its unilateral subjective discretion must be denied.

Even if the Court were to conclude that the face of the Agreement is deemed ambiguous as to whether the Court should apply an objective or subjective standard to the satisfaction clause, Maryland law provides that, in those circumstances, the objective standard should be applied.  *Volos, Ltd. v. Sotera*, 286 A.2d 101, 109 (Md. 1972) ("If there is any ambiguity in the contract in regard to whether a subjective or objective test applies, the Courts will prefer a construction that the objective test applies inasmuch as this test is more likely to prevent a forfeiture.").  *See also McNeil v. Armstrong*, 81 F. 943, 945 (4th Cir. 1897) (holding that contracts intended to gratify taste and personal preferences must be explicit); *Christian*, 139 F. Supp. 2d at 685 (citing Restatement (Second) of Contracts § 228) (holding that objective standard is preferable where practicable and where satisfaction provision is ambiguous).

### C.   Sky Angel Has Sufficiently Pled Discovery's Breach Of The Termination Provision of the Agreement.

In its Complaint, Sky Angel properly stated a claim for breach of contract based on Sky Angel's objectively satisfactory performance and Discovery's objectively unreasonable termination of the Agreement.

Sky Angel alleges that it fully performed its distribution obligations and timely paid all license fees due to Discovery under the Agreement.  (Compl. ¶¶ 23-25.)  Sky Angel asserts that it performed its distribution services as stipulated in Section 7 of the Agreement and that, "[d]uring the time of contract performance, there had been no change . . . in the Sky Angel signal integrity or signal security measures or distribution methodology."  (Compl. ¶ 28.)  Accepting these allegations as true, Sky Angel's

13

performance with respect to its distribution methodology meets the objective criteria of satisfaction readily available in the terms of the Agreement, and there was no objectively reasonable basis for Discovery's claim of dissatisfaction.

Further, Sky Angel also alleges that Discovery admits that its decision to terminate the Agreement was based not on its own objective or even subjective determination that Sky Angel's distribution methodology was not satisfactory but rather on its business decision based upon its perception of the subjective views of third parties and legal and business risks distinct from Sky Angel's performance.  (*See* Compl. ¶ 37.)  In its Motion, Discovery does not even attempt to feign any dissatisfaction with the actual methodology employed but rather claims dissatisfaction with how it supposes the "distribution methodology" would be perceived by third parties from a business perspective.  (Mot. 9-10.)  A reading of the satisfaction provision that would permit Discovery's termination on this basis would take the control of performance to satisfaction away from the parties and certainly does not comport with reasonable contract interpretation.

Sky Angel has properly stated a claim, and Discovery's Motion for Judgment should be denied.

**D.     Sky Angel Has Also Sufficiently Pled That Discovery's Termination Was Not Made In Good Faith And That Discovery Therefore Breached Its Implied Obligation Under The Affiliation Agreement.**

Even if this Court were inclined to assess Discovery's claim of dissatisfaction under a subjective good faith standard, Sky Angel alleges in the Complaint that Discovery never determined in good faith that Sky Angel's distribution methodology was unsatisfactory and further alleges that its claim of dissatisfaction made by Discovery in order to terminate the Agreement was not made in good faith. (Compl.  ¶¶ 53, 69.)

14

As this Court is aware, Maryland law recognizes an implied duty of good faith and fair dealing in all contracts. *Tribalco, LLC v. Hue Tech., Inc.*, CIV. JFM-11-93, 2011 WL 3821074, at \*5 (D. Md. Aug. 26, 2011) (citing *Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010)). This duty "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 182-83 (4th Cir. 2000).

"[T]he covenant of good faith and fair dealing applies to situations in which a party affirmatively exercises the discretion accorded to it under the contract[.]" *Tribalco*, 2011 WL 3821074, at \*5. "When a party to a contract is granted discretion to make decisions without an express standard to guide . . . its use, Courts will infer that the parties intended the discretion to be used reasonably as opposed to arbitrarily and capriciously." *7-Eleven, Inc. v. McEvoy*, 300 F. Supp. 2d 352, 361 (D. Md. 2004) (citing *Julian v. Christopher*, 575 A.2d 735 (Md. 1990)). "[T]he obligation of good faith and fair dealing requires a party exercising discretion to do so in accordance with the 'reasonable expectations' of the other party." *Questar*, 978 A.2d at 675.

Additionally, courts are to infer an implied promise by the party with the discretion "to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Tribalco*, 2011 WL 3821074, at \*5 (quoting *E. Shore Mkts.*, 213 F.3d at 184). *See also Clancy v. King*, 954 A.2d 1092, 1109 (Md. 2008) (discretion is limited in good faith); *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1575 (2d Cir. 1994) (same).

In order for a party to exercise rights under a satisfaction clause in good faith, "dissatisfaction . . . must be real and not pretended, capricious, mercenary, or the result of dishonest design." *Ferris v.*

*Polansky*, 59 A.2d 749, 752 (Md. 1948). *See also First Nat'l Realty*, 233 A.2d at 815 (court inquires whether the party's invocation of satisfaction clause was arbitrary or capricious "regardless of whether the objective criteria . . . or subjective criteria . . . must be met"). At the very least, a party's invocation of a satisfaction provision must be based on an honest and genuine determination and not based on some ulterior motive. *Devoine Co., Inc. v. International Co., Inc.*, 136 A. 37, 38-39 (Md. 1927). *See also Big Horn Coal*, 852 F.2d at 1267 ("[T]he parties reasonably expect that the buyer will reject the goods only if he is truly dissatisfied with the quality and not for some ulterior reason."); *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1183-84 (D. Kan. 1998) ("[E]ven if the court were to accept defendant's position that its duty to perform under the contract was conditioned on its subjective approval of the results of the psychological exam, the court would still need to determine whether defendant exercised that judgment in good faith.").

In determining whether a party has invoked a satisfaction clause in good faith, courts permit broad inquiry into the party's true reasons for claiming dissatisfaction. *See Questar Builders*, 978 A.2d at 676 (on the issue of good faith, "a discretion-exercising party may be called upon to justify its action by giving its reasons[,]" and "[a] court or jury must decide whether those reasons reasonably deserved significant weight and were among the reasons allowed by the contract") (citation omitted); *Devoine*, 136 A. at 39 (permitting a party "liberty to introduce evidence of a wide range" of evidence tending to prove its theory that the seller had rejected the goods because it had "found a cheaper source of supply").

The question of a party's good faith in the exercise of contractual discretion is a factual issue that cannot be resolved on a motion to dismiss. *See, e.g.*, *Etienne*, 12 F. Supp. 2d at 1184 (denying motion to dismiss breach of contract claim where the court cannot determine whether defendant exercised contractual discretion in good faith in the absence of evidence concerning defendant's deliberative

16

process); *White Stone Partners, LP v. Piper Jaffray Cos., Inc.*, 978 F. Supp. 878, 885 (D. Minn. 1997) (denying motion to dismiss breach of contract claim where allegations supported an inference that the defendants' stated reasons for terminating the agreement were pretextual). Ultimately, the question of whether a party has exercised its contractual discretion in good faith is often a question of fact for the jury. *Clancy*, 954 A.2d at 1109-10. *See also Towson Univ. v. Conte*, 862 A.2d 941, 950 (Md. 2004) (permitting jury to review defendant's motive for termination of satisfaction contract to determine whether dissatisfaction was genuine and honest); *Big Horn Coal*, 852 F.2d at 1267 ("In [cases involving satisfaction provisions], courts have examined motive evidence when deciding whether the provision was invoked within the implied good faith expectations of the parties.").

Here, Sky Angel has provided numerous allegations to support the inference that Discovery's decision to terminate for purported dissatisfaction with Sky Angel's distribution methodology was not made in good faith. First, the allegations in the Complaint assert that Discovery was actually "fully satisfied" with the distribution methodology used by Sky Angel. (Compl. ¶ 29.)

- During the time of contract performance, neither Discovery nor Animal Planet ever complained about ***any*** aspect of Sky Angel's performance or distribution methodology, including the security or integrity of Sky Angel's system. (Compl. ¶ 26.)

- During the time of contract performance, neither Discovery nor Animal Planet ever requested an audit for purposes of investigating whether the Services were only being received by subscribers, as permitted by Section 7.3 of the Agreement. (Compl. ¶ 27.)

- During the time of contract performance, there had been no change—and indeed no material change—in the Sky Angel signal integrity or signal security measures or distribution methodology. (Compl. ¶ 28.)

Further, Sky Angel asserts that approximately two years after entering into the Agreement *and only four months* before sending a letter notifying Sky Angel of the termination, Discovery "urged Sky Angel to

17

*add* Discovery's Science Channel to the Sky Angel lineup . . . and to commit to *adding more Discovery programming channels* as the Sky Angel System grew."  (Compl. ¶ 29 (emphasis added).)  Sky Angel also alleges that after being informed that Discovery had "determined that the distribution methodology . . . is not satisfactory," it informed Discovery that (1) it believed "Discovery has no reasonable basis for its belief that this IP distribution methodology is any way unsatisfactory" (Compl. ¶ 32), and (2) that it "offer[ed] its full cooperation to Discovery to provide it with all reasonable assurances that Sky Angel's distribution methodology is satisfactory so that the Affiliation Agreement may continue" (Compl. ¶ 33).[4]

Sky Angel has clearly provided allegations to support the notion that the expression of dissatisfaction was not warranted by the facts.  Under these facts, it is plausible that the claim of dissatisfaction by Discovery is arbitrary at best and not made in good faith.  Discovery's termination of the Affiliation Agreement on this false basis defies Sky Angel's reasonable and justifiable expectations under the contract and constitutes a breach of Discovery's implied covenant of good faith and fair dealing.  *See Devoine*, 136 A. at 38-39 (requiring genuine determination of dissatisfaction); *Ferris*, 59 A.2d at 752 (requiring that dissatisfaction be real and not pretended); *First Nat'l Realty*, 233 A.2d at 815 (forbidding arbitrary and capricious exercise of contractual discretion); *7-Eleven*, 300 F. Supp. 2d at 361 (same); *Questar*, 978 A.2d at 675 (obligating party exercising discretion to act in accordance with the other party's reasonable expectations).

In addition, Sky Angel alleges that Discovery's termination of the Agreement was "unrelated to Sky Angel's performance" and was instead based on business considerations that do not constitute permissible grounds for termination.  (Compl. ¶ 37.)  Sky Angel alleges that Discovery believed it was

---

[4] Contrary to Discovery's allegations that Sky Angel is attempting to "condition Discovery's right to terminate upon . . . an opportunity to cure" (Mot. 10) and that "Sky Angel complains about having no opportunity to cure" (Mot. 10), Sky Angel has set forth allegations including its assurance of performance in order to establish the facts underlying its belief that the termination was not, in fact, based on actual dissatisfaction with Sky Angel's distribution methodology.

18

permitted to terminate the Agreement "in its sole discretion, with no showing of fault or changed circumstances needed, and with no opportunity to cure required, if Discovery is *not comfortable* with the *distribution system* Sky Angel is using."  (Compl. ¶ 38 (emphasis added).)  Discovery has, in essence, admitted that it was attempting to "recapture" business that it could potentially lose as a result of entering the contract and that it believed it could "injure and frustrate" Sky Angel's rights to "receive the fruits of the contract between them" without legal recourse.

Maryland law does not permit Discovery to act as it did, and Sky Angel has stated a claim for a breach of contract based on the implied covenant of good faith and fair dealing.

## V.    CONCLUSION

For the reasons set forth above, Sky Angel respectfully requests that the Court deny the Motion for Judgment on the Pleadings by Discovery and Animal Planet.


Dated:    March 18, 2013                          Respectfully Submitted,

                                                  HOLLAND & KNIGHT LLP

                                                      /s/ Lynn E. Calkins
                                                  Lynn E. Calkins, Bar No. 12121
                                                  Cheryl Feeley, Bar No. 28862
                                                  800 17th Street, N.W., Suite 1100
                                                  Washington, DC 20006
                                                  Phone: (202) 955-3000
                                                  Fax:    (202) 955-5564
                                                  Email: lynn.calkins@hklaw.com
                                                  Email: cheryl.feely@hklaw.com

                                                  *Counsel for Sky Angel U.S., LLC*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 18th day of March, 2013, I electronically filed the foregoing Opposition to Motion for Judgment on the Pleadings with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Anthony T. Pierce, Bar No. 13321
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Tel: (202) 887-4000
Fax: (202) 887-4288
apierce@akingump.com


      /s/ Lynn E. Calkins
Lynn E. Calkins