IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SKY ANGEL U.S., LLC       :

      :

     v.       :    Civil Action No. DKC 13-0031

      :

DISCOVERY COMMUNICATIONS,
   LLC, et al.       :

**MEMORANDUM OPINION**

Several motions are presently pending and ready for review in this breach of contract case: (1) the motion for judgment on the pleadings filed by Defendants Discovery Communications, LLC, and Animal Planet, L.L.C. (ECF No. 28); (2) the motion to file unredacted versions of the pleadings publicly submitted by Plaintiff Sky Angel U.S., LLC ("Sky Angel") (ECF No. 4); and (3) the supplemental motion to file unredacted documents publicly submitted by Sky Angel (ECF No. 30). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion for judgment on the pleadings will be denied, and Sky Angel's motions for leave to file unredacted versions of documents publicly will be granted in part and denied in part.

I. **Background**

     A. **Factual Background**

Sky Angel alleges the following facts in its complaint. (ECF No. 5). Sky Angel operates a subscription-based,

multichannel video programming distribution service that delivers family-oriented video programming directly to the television sets of subscribers. Sky Angel enters into contracts with content providers to receive their programming *via* satellite earth stations and fiber optic connections. Sky Angel then formats the programming using Internet Protocol ("IP") technology; securely encrypts the programming; and ultimately transmits the programming *via* broadband Internet connections to the proprietary set-top boxes owned or leased by Sky Angel subscribers. The set-top boxes, which are secured by "industry standard encryption and conditional access technologies," decode the programming and send it to the subscriber's television set.

On October 3, 2007, Sky Angel entered into a contract with Discovery and Animal Planet ("the Agreement"). (ECF No. 5-1). Pursuant to the Agreement, Discovery and Animal Planet agreed to provide Sky Angel a non-exclusive license and right to distribute five channels *via* its "Affiliate Systems": Discovery Channel, Discovery Kids Channel, Discovery Home Channel, Military Channel, and Animal Plant (together, "the Services"). In exchange for this license and the right to distribute the Services, Sky Angel agreed to pay Discovery and Animal Planet monthly licensing fees on a per-subscriber basis.

Section 7 of the Agreement establishes certain requirements for Sky Angel's distribution of the Services. For example, Sky

Angel must: (1) "distribute each Service in its entirety, without delay, interruption, alteration, addition, deletion or editing of any portion thereof"; (2) "encrypt each of the Service signals or use a substantially similar method of security to secure each of the Service signals from [Sky Angel's] point of receipt of the Service signals through the points of reception by the Service Subscribers"; and (3) "take all necessary precautions with respect to Affiliate Systems to ensure that the Services are received only by parties who are Service Subscribers." (ECF No. 5-1 §§ 7.1, 7.2). Sky Angel also agreed to conduct an audit to reveal unauthorized recipients of the Services upon Defendants' request. (*Id.* § 7.3).

The Agreement provided that it would expire on December 31, 2014. (*Id.* § 1.11). Section 12.1 of the Agreement, titled "Default and Termination," provides as follows:

> Due and timely performance by [Sky Angel] is of the essence hereof. If [Sky Angel] defaults in the (a) making of any payments hereunder or (b) performance of any of its material obligations hereunder, including its obligations to maintain the security of a Service signal which failure to maintain the security of a signal results in a theft of such Service in an amount equal to or greater than ten percent (10%) of [Sky Angel's] then current base of Subscribers to that Service, and such default shall not be cured within five (5) days after written notice thereof to [Sky Angel], or if [Sky Angel] becomes insolvent, or if a petition

under any bankruptcy act shall be filed by or against [Sky Angel] (which petition, if filed against [Sky Angel], shall not have been dismissed within thirty (30) days thereafter), or if [Sky Angel] executes an assignment for the benefit of creditors, or if a receiver is appointed for the assets of [Sky Angel], or if [Sky Angel] takes advantage of any insolvency or any other like statute (any of the above acts are hereinafter called "Event of Default"), then [Discovery and Animal Planet] may, in addition to any and all other rights which [Discovery and Animal Planet] may have against [Sky Angel], terminate this Agreement by giving written notice to [Sky Angel] at any time after the occurrence of an Event of Default. . . . Notwithstanding anything to the contrary herein, in the event [Discovery and Animal Planet] determine[] that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of [Sky Angel] are not satisfactory, [Discovery and Animal Planet] shall have the right to terminate this Agreement.

The Agreement contains a choice-of-law provision establishing that the parties' rights and obligations should be governed by and construed according to the laws of the State of Maryland, without regard to conflict-of-laws principles. (ECF No. 5-1 § 13.8). Sky Angel, along with its employees and agents, also agreed to maintain the confidentiality of the Agreement's terms and conditions, subject to certain exceptions, including "in order to enforce its rights pursuant to this Agreement." (*Id.* § 13.6).

According to the complaint, Sky Angel performed all of its obligations under the Agreement between October 2007 and April 2010. Sky Angel did not make any changes to its signal integrity, signal security, or distribution methodology during this time period. Sky Angel further alleges that, for the first two years of the Agreement, neither Discovery nor Animal Planet complained about any aspect of Sky Angel's performance or its distribution methodology. Discovery and Animal Planet also did not exercise their rights under Section 7 of the Agreement to request an audit of Sky Angel's subscribers. In fact, in August and September 2009, Discovery encouraged Sky Angel to add additional Discovery programming channels to its offerings.

Nonetheless, on January 22, 2010, Discovery sent a letter to Sky Angel on behalf of itself and Animal Planet stating that:

> We have determined that the distribution methodology used by and on behalf of [Sky Angel] is not satisfactory. Accordingly, pursuant to Section 12.1 of the Agreement, we hereby elect to terminate the Agreement. In order to provide for an orderly transition process, including notification to your subscribers, we will provide you with a three (3) month transition period; accordingly, the Agreement will terminate effective on April 22, 2010.

(ECF No. 5 ¶ 31). Sky Angel's response, dated March 4, 2010, stated that "Discovery has no reasonable basis for its belief that th[e] IP distribution methodology [used by Sky Angel for more than two years without objection] is in any way

unsatisfactory" and also offered "to cooperate in establishing the security of its system to Discovery's reasonable satisfaction." (*Id.* ¶ 32). On March 19, 2010, Defendants responded but did not provide any additional details regarding their purported dissatisfaction with Sky Angel's distribution methodology.

In an effort to avert termination, Sky Angel filed an emergency petition with the Federal Communications Commission seeking to halt any disruption in programming signals. According to Sky Angel, Discovery and Animal Planet's opposition to this request stated that:

> Discovery has concluded that there is a substantial legal risk that licensors of its programming will view the transportable Sky Angel distribution methodology as exceeding the distribution rights Discovery has. Discovery has further identified a serious and irreparable business risk in the form of damaged relations with its distributors, who might view [Discovery] as having granted Sky Angel rights that it refused them and that Discovery claimed not to grant anyone. Discovery also could face additional and substantial legal, business and financial risks if any of its distributors view that Sky Angel distribution methodology as having triggered [Most Favored Nation] obligations in their own Agreements.

(ECF No. 5 ¶ 37) (second alteration in original). Thus, according to Sky Angel, Defendants "admitted" that "their termination of the Agreement was unrelated to Sky Angel's performance." (*Id.*). On April 22, 2010, Discovery and Animal

Plan severed their programming connections with Sky Angel. As a result of this termination, Sky Angel asserts that it suffered substantial business losses, included costs associated with altering its promotional materials to reflect the discontinuation of the Services and a decrease in current and future subscribers.

## B.    Procedural Background

On January 3, 2013, Sky Angel filed a complaint in this court asserting that Defendants' termination of the Agreement constituted a breach of contract. (ECF Nos. 1 & 5).[1] Specifically, Sky Angel alleges that Section 12.1 "did not permit [Discovery or Animal Planet] to terminate the Agreement at any time without cause" but instead required Defendants to make a determination that the "distribution methodology criteria" established by Section 7 was not satisfactory. (ECF No. 5 ¶¶ 50, 66). Sky Angel further asserts that Defendants did not make, and could not have made, such a determination, but instead "terminated the Agreement for other reasons including [Defendants'] extra-contractual legal and business concerns about maintaining the contract with Sky Angel" – a rationale that "was not sufficient under the Agreement and thus

_____

[1] Sky Angel publicly filed a redacted version of its complaint, without any exhibits, as ECF No. 1, and filed unredacted versions of its complaint and the Agreement under seal, respectively, as ECF Nos. 5 & 5-1.

constituted an unauthorized, improper termination." (*Id.* ¶¶ 53, 58, 69, 74). Sky Angel also alleges that, by terminating the Agreement without "allowing Sky Angel a chance to resolve any purported problems," Defendants breached the implied covenant of good faith and fair dealing. (*Id.* ¶ 60).

On January 7, 2013, Sky Angel moved to file publicly an unredacted version of its complaint, along with the Agreement, or, alternatively, for leave to file these documents under seal. (ECF No. 4). On March 1, Defendants filed the following documents under seal: (1) their answer to the complaint (ECF No. 26); (2) an opposition to Sky Angel's motion to file unredacted versions of the pleadings publicly (ECF No. 27); and (3) a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (ECF No. 28). The same day, Defendants also publicly filed redacted version of each of these documents. (ECF Nos. 23, 24, & 25). On March 18, Sky Angel filed: (1) a reply in support of its motion regarding sealing (ECF No. 29); (2) an opposition to Defendants' motion for judgment on the pleadings (ECF Nos. 31 & 32-1); and (3) a supplemental motion to file documents publicly (ECF No. 30). On April 4, Defendants filed a reply in support of their Rule 12(c) motion (ECF Nos. 34 & 35) and a response to Sky Angel's supplemental motion regarding sealing (ECF No. 36).

## II. Motion for Judgment on the Pleadings

### A. Standard of Review

Defendants seek judgment on Sky Angel's breach of contract claims pursuant to Fed.R.Civ.P. 12(c), which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Under the circumstances presented here, the standard applicable to a motion for judgment on the pleadings is the same as that applied when analyzing a motion to dismiss for failure to state a claim. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 3318 (2010); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further

factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

The parties dispute whether, as alleged, Defendants' early termination constituted a breach of the Agreement. The last sentence of Section 12.1 provides that, "[n]otwithstanding anything to the contrary herein, in the event [Defendants] determine[] that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of [Sky Angel] are not satisfactory, [Defendants] shall have the right to terminate the Agreement" ("the Termination Clause"). (ECF No. 5-1 § 12.1). According to Defendants, the Termination Clause establishes an unqualified right of termination that requires only a subjective, honest determination of dissatisfaction with Sky Angel's signal integrity, signal security measures, or distribution methodology – a determination that need not be based on any performance breach by Sky Angel. (ECF No. 28-1, at 6-9; ECF No. 35, at 2-6). Because Sky Angel affirmatively alleges that Defendants based their determination of dissatisfaction on a conclusion that the "transportable Sky Angel distribution methodology" could subject Defendants to certain legal and business risks, Defendants contend that the complaint alleges compliance with, rather than a breach of, the Agreement. (*Id.*).

Sky Angel, in turn, argues that the Termination Clause did not provide Defendants with an unfettered right to terminate the

Agreement without regard for any actual measure of Sky Angel's performance of its contractual obligations. (ECF No. 32-1, at 8-12). Instead, Sky Angel contends that the Termination Clause requires an objectively reasonable determination of dissatisfaction with Sky Angel's distribution methodology, to be measured by the criteria set forth in Section 7 of the Agreement. Because the complaint alleges that the distribution methodology used by Sky Angel satisfied such criteria at all times, Plaintiff maintains that it has stated a claim for breach of contract. (*Id.* at 13-14). Sky Angel alternatively asserts that, even if Defendants' determination of dissatisfaction is measured pursuant to a subjective standard of honest satisfaction, the complaint's allegations give rise to a plausible inference that Defendants' decision to terminate was motivated by extra-contractual considerations rather than any dissatisfaction with Sky Angel's distribution methodology. (*Id.* at 14-19). Because Sky Angel is correct that the complaint states a plausible breach of contract claim regardless of whether an objective or subjective standard applies, Defendants' motion for judgment on the pleadings must be denied.

Where a contractual provision conditions continued performance on the satisfaction of a party, the "exercise of judgment [by the party to be satisfied] must be in accordance with the duty of good faith and fair dealing" to preclude the

contract from being rendered illusory. Restatement (Second) Contracts § 228 cmt. a (1981); *see also Questar Builders, Inc. v. CB Flooring, LLC*, 410 Md. 241, 273 (2009) (explaining that, in Maryland, "a party with [contractual] discretion is limited to exercising that discretion in good faith and in accordance with fair dealing"). Good faith is a question of fact that, depending on the nature of the contract, is assessed pursuant to one of two standards: an objective standard of reasonableness or a subjective test of honest satisfaction. *See, e.g., First Nat'l Realty Corp. v. Warren-Ehert Co.*, 247 Md. 652, 658-59 (1967); *Questar*, 410 Md. at 281-82.

The subjective standard typically applies to satisfaction clauses found in contracts involving matters of "fancy, personal taste, or judgment." Williston on Contracts § 38:23 (4th ed. updated 2013); *see also Clancy v. King*, 405 Md. 541, 565 n.24 (2008) (subjective standard applied to a contract provision pursuant to which an author retained creative control over a television project); *Ferris v. Polansky*, 191 Md. 79, 86 (1948) (subjective standard applied to an inn owner's contract with a band). The objective standard applies to contract provisions that require satisfaction "as to mechanical fitness, utility, or marketability" and "in other situations in which a performance or objective test is feasible." Williston on Contracts §§ 38:21, 38:24 (4th ed. updated 2013). "If there is ambiguity

in the contract in regard to which test applies, the Courts will prefer a construction that the objective test applies inasmuch as this test is more likely to prevent a forfeiture." *Volos, Ltd. v. Sotera*, 264 Md. 155, 170 (1972); *see also* Restatement (Second) Contracts § 228, cmt. b (expressing a general preference for an objective standard).

Under the objective standard, the question is whether a reasonable person in the position of the party to be satisfied should have been satisfied. *First Nat'l Realty*, 247 Md. at 659. Stated another way, the objective standard requires the party to be satisfied to act "in accordance with the reasonable expectations of the other party," as established by the language of the contract itself. *Questar*, 410 Md. at 282 (in order for a party's exercise of its rights under a "termination for convenience" clause to be performed in objectively good faith, the asserted basis for the termination must be "commercially reasonable"). By contrast, under the subjective standard of honest satisfaction, the "'opinion [of the person to be satisfied] control[s] in the absence of fraud *or bad faith*.'" *Clancy*, 405 Md. at 568 (quoting *First Nat'l Realty*, 247 Md. at 657). In other words, unreasonable dissatisfaction is permitted so long as it is honest. Even under the subjective standard, however, the dissatisfaction cannot be "with the bargain" itself. Restatement (Second) Contracts § 228, cmt. a. Nor is

the party with discretion free to make its decision "on some question of interest or advantage not made the basis of rights or obligations by the contract"; in such cases, the decision is deemed to be "outside of the contract and is given no effect by it." *Devoine v. Int'l Co.*, 151 Md. 690, 692-94 (1927) (where buyer refused shipments of cherries, seller was entitled to introduce evidence showing that the refusal was not, in fact, due to the seller's honest dissatisfaction with the cherries' quality, but instead because it found a cheaper source of supply); *see also Ferris*, 191 Md. at 86 (dissatisfaction "must be real and not pretended, capricious, mercenary, or the result of a dishonest design").

At this stage, it is not necessary to decide whether an objective or subjective standard applies to the determination of dissatisfaction required by the Termination Clause. *See, e.g.*, *First Nat'l Realty*, 247 Md. at 660 (declining to decide whether an objective or subjective standard applied because the evidence showed that the buyer acted arbitrarily and capriciously, which "vitiated the quality of the reasonableness of the [party's] action [under] the objective criteria . . . and his good faith [under] the subjective criteria"). If proven, the allegations of the complaint could give rise to a conclusion that Defendants acted arbitrarily and capriciously in terminating the Agreement and thus failed to act in good faith under either standard.

The key allegations in the complaint are as follows. First, Sky Angel's distribution methodology complied with all requirements set forth in the Agreement. Second, Sky Angel did not make any changes to its distribution methodology throughout the first two years of the Agreement. Third, Defendants never complained about any aspect of Sky Angel's performance or its distribution method. Fourth, Defendants terminated the Agreement based on their purported dissatisfaction with Sky Angel's distribution methodology, but refused to provide any details about their dissatisfaction. Fifth, Defendants later admitted in an administrative proceeding that they terminated the Agreement based on their conclusions (1) that other licensors could view the Sky Angel distribution methodology "as exceeding the distribution rights Discovery has" and (2) that their distributors could view Discovery "as having granted Sky Angel rights that it refused them and that Discovery claimed not to grant anyone." (ECF No. 5 ¶ 37).

If proven, these allegations could give rise to a reasonable inference that, after recognizing the breadth of the rights they had granted to Sky Angel, Defendants terminated the Agreement in an attempt to avoid the negative consequences that the Agreement could have on other, more lucrative business relationships. Put differently, a fact-finder could reasonably infer that Defendants terminated the Agreement only after

realizing that they had made a bad bargain. If Plaintiff's
distribution methodology did indeed comply with the requirements
of Section 7, a fact-finder could conclude that Defendants'
actions were inconsistent with Sky Angel's expectations under
the Agreement and therefore were objectively unreasonable. *See*
*Questar*, 410 Md. at 282.[2]  Likewise, if Sky Angel's allegations

---

[2] *Questar* also forecloses Defendants' argument that they are
entitled to judgment as a matter of law because the Termination
Clause does not require their dissatisfaction to be based on a
performance breach by Sky Angel, even if the provision is
subject to an objective standard. (ECF No. 35, at 3-7).  In
*Questar*, a general contractor entered into a contract with a
subcontractor for the installation of carpeting.  410 Md. at
245.  The contract included a clause that permitted the general
contractor to terminate "for convenience," which the general
contractor later invoked, asserting that it had lost confidence
in the subcontractor's ability to perform its obligations in a
satisfactory manner. *Id*. at 252.  The Court of Appeals of
Maryland concluded that, although the termination for
convenience clause could be exercised absent a performance
default by the subcontractor, it did not establish a "right to
terminate based on a whim." *Id*. at 274.  Rather, the general
contractor was still subject to "the implied limitation that
[the clause] be exercised in good faith," meaning that it could
terminate for convenience only if its determination was
consistent with the reasonable expectations of the
subcontractor. *Id*. at 279, 283.  In remanding the case for
additional fact-finding, the *Questar* court observed that the
lower court, in the role of fact-finder, could find bad faith if
the evidence showed that the general contractor relied on the
termination for convenience clause "to recapture a better
bargain" with another flooring company or if it "did not make
reasonable efforts to ensure that continuing its contractual
relationship with [the subcontractor] remained convenient." *Id*.
at 283-84.  Thus, under *Questar*, even if the Termination Clause
did not require an actual performance *breach* by Sky Angel, a
fact-finder could still conclude that Defendants invoked the
provision in bad faith if the evidence substantiates Plaintiff's
allegations that Defendants were attempting to salvage more

are substantiated, a fact-finder could also conclude that Sky Angel's distribution methodology was unsatisfactory to Defendants only in the sense that they were concerned with how that methodology might be perceived by third parties – a reason that would be "outside of the contract" and that could not be given effect, even under a subjective standard of honest satisfaction. *See Devoine*, 151 Md. at 38. Thus, contrary to Defendants' arguments, it cannot be said that the complaint's allegations, when taken as true, necessarily establish that Defendants had a legitimate basis for terminating the Agreement. Accordingly, Defendants' motion for judgment on the pleadings will be denied.

**III. Motions for Leave to File Publicly**

The parties also dispute whether the Agreement and any references to its terms should be available publicly. Although Sky Angel originally filed the Agreement under seal to provide Defendants with an opportunity to brief the issue, Plaintiff now advances two arguments as to why the full, unredacted versions of all pleadings, motions, and exhibits should be released on the public docket. (ECF Nos. 4 & 30). First, Sky Angel contends that the confidentiality provision in the Agreement does not apply, as this action seeks to enforce Sky Angel's

lucrative business relationships once they realized the extent of the rights they had granted to Sky Angel under the Agreement.

rights under the Agreement and therefore falls squarely within one of the provision's express exceptions. (ECF No. 4-1, at 2). Second, Sky Angel asserts that this case does not present any unusual circumstances that warrant sealing under either the common law or the First Amendment. (*Id.* at 2-4). In response, Defendants contend that the Agreement and any references to its terms and conditions should remain under seal because of the Agreement's confidentiality provision and because a compelling interest exists to deny public access. (ECF Nos. 27 & 36).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). "The common law presumes a right to inspect and copy 'all judicial records and documents,'" *id.* at 575 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)), although this presumption "'can be rebutted if countervailing interests heavily outweigh the public interests in access,'" *id.* (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978). Under this common law balancing analysis, "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*,

846 F.2d at 253. "Ultimately, under the common law[,] the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Nixon*, 435 U.S. at 598-99) (second alteration in original).

In addition to the public's common law right of access, the First Amendment provides a "more rigorous" right of access for certain "judicial records and documents." *Va. Dep't of State Police*, 386 F.3d at 576; *see also In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (explaining the "significant" distinction between the two rights of access). Where the First Amendment does apply, access may be denied "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180.

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record'" in the first instance." *In re Application*, 707 F.3d at 290. The Fourth Circuit recently held that judicially authored or created documents are "judicial records," as are documents filed with the court that "play a role in the

adjudicative process, or adjudicate substantive rights." *Id.*
(citing *Rushford*, 846 F.2d at 252; *In re Policy Mgt. Sys. Corp.*,
67 F.3d 296 (4th Cir. 1995) (unpublished table decision)).

Thus, as a substantive matter, when a district court is
presented with a request to seal certain documents, it must
determine two things: (1) whether the documents in question are
judicial records to which the common law presumption of access
applies; and (2) whether the documents are also protected by the
more rigorous First Amendment right of access. *In re
Application*, 707 F.3d at 290; *see also Va. Dep't of State
Police*, 386 F.3d at 576.

The sealing of any judicial records must also comport with
certain procedural requirements. First, the non-moving party
must be provided with notice of the request to seal and an
opportunity to object. *In re Knight Publ'g Co.*, 743 F.2d 231,
235 (4th Cir. 1984). This requirement may be satisfied by either
notifying the persons present in the courtroom or by docketing
the motion "reasonably in advance of deciding the issue." *Id.*
at 234. In addition, "less drastic alternatives to sealing"
must be considered. *Va. Dep't of State Police*, 386 F.3d at 576;
*see also* Local Rule 105.11 (requiring any motion to seal to
include both "proposed reasons supported by specific factual
representations to justify the sealing" and "an explanation why
alternatives to sealing would not provide sufficient

protection"). Finally, if sealing is ordered, such an order must "state the reasons (and specific supporting findings)" for sealing and must explain why sealing is preferable over alternatives. *Va. Dep't of State Police*, 386 F.3d at 576; *see also Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 122 (D.Md. 2009) ("[I]f the Court decides to seal documents, it has to explain itself in a complete and thorough manner.").

Applying these principles here, it must first be determined whether the materials Defendants seek to seal are judicial records, as recently defined by the Fourth Circuit. The Agreement forms the basis for this breach of contract action and thus necessarily plays a role in adjudicating the substantive rights of the parties to this dispute, as illustrated by the parties' extensive citations to the Agreement in briefing Defendants' dispositive motion for judgment on the pleadings. Accordingly, the Agreement and any references thereto in the pleadings and in the briefs associated with Defendants' Rule 12(c) motion are judicial records to which the common law right of public access attaches. Therefore, to justify sealing, Defendants must – at a minimum – establish a significant

countervailing interest that outweighs the public's interest in openness.[3]

The thrust of Defendants' request to seal the Agreement is that the contract contains confidential commercial information, the disclosure of which would disadvantage Defendants with its direct competitors and its current and future licensees. (ECF No. 27, at 4). Defendants submit the declaration of Elisa Freeman, a Senior Vice President with Discovery, who avers that the Agreement is a "heavily negotiated commercial arrangement" that contains sensitive information pertaining to "carriage provisions, economic terms, permitted technologies and system definitions, content covenants, length of term and other negotiated, contractual provisions." (ECF No. 27-1, Freeman Decl. ¶¶ 4, 6). Ms. Freeman also represents that Discovery does not release its pricing information and takes affirmative steps to maintain the confidentiality of its affiliation agreements by, *inter alia*, including confidentiality provisions. (*Id.* ¶¶ 7-8).

As Sky Angel observes, these conclusory assertions do not satisfy Defendants' burden of establishing a significant countervailing interest that outweighs the public right of

---

[3] Because, as discussed below, Defendants fail to establish such an interest, it need not be decided whether the Agreement is also protected by a First Amendment right of access.

access to the Agreement – the contract that is at the heart of this lawsuit. Neither Defendants' brief nor Ms. Freeman's declaration provides specific factual details regarding the purported competitive disadvantage that Defendants would face upon unsealing the Agreement, nor is it clear how the contract's terms – with the exception of the pricing information discussed below – are truly "confidential" or "sensitive." Rather, at bottom, Discovery appears to be arguing "that it does not want the information it uses in defense of this case to be public, as it feels it would be detrimental to its financial interests in the business community." *Minter*, 258 F.R.D. at 124. Such an "urge for secrecy is incompatible with the public resolution of business disputes in our open judicial system." *Id.* (denying a contested motion to seal where the moving party referenced only "vague topics" of business information contained in the materials it sought to seal but did not make specific factual representations about the competitive disadvantage it would face by making them publicly available).[4]

---

[4] Each of the three cases that Defendants cite in support of sealing involved *unopposed* motions to seal. *See U.S. Home Corp. v. Settlers Crossing, LLC*, No. 08-cv-1863, 2012 WL 6019293, at *2 (D.Md. Nov. 30, 2012) (granting unopposed motion to seal certain exhibits); *In re Constellation Energy Grp., Inc. Secs. Litig.*, No. 08-cv-02854, 2012 WL 1067651, at *12 (D.Md. Mar. 28, 2012) (granting unopposed motion to seal); *Randolph v. ADT Sec. Servs., Inc.*, No. 09-cv-1790, 2011 WL 3476898, at *11 (D.Md. Aug. 8, 2011) (granting unopposed motion to seal). In light of

Nor does the confidentiality provision in the Agreement tip the balance in favor of denying public access. As an initial matter, this action appears to come within the exception to the provision that applies when Sky Angel "seeks to enforce its rights pursuant to this Agreement." (ECF No. 5-1 § 13.6). Even if none of the exceptions applied, however, the confidentiality provision would not overcome the common law presumption of public access. *See, e.g.*, *Bureau of Nat'l Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352, at *3 (D.Md. July 25, 2012) (in declining to seal relevant portions of a confidential settlement agreement, observing that "[p]rivate parties are entitled to enter into confidential agreements, but the courts ordinarily are not party to such promises of confidentiality . . ."); *Cochran v. Volvo Grp. N. Am., LLC*, --- F.Supp.2d ----, No. 1:11-CV-927, 2013 WL 784502, at *4 (M.D.N.C. Mar. 1, 2013) ("[T]he parties cannot by agreement overcome the public's right of access to judicial records.").

Nonetheless, there are certain portions of the Agreement that are not relevant to Sky Angel's breach of contract claims. In particular, based on the facts alleged in the complaint,

Sky Angel's vigorous opposition to the continued sealing of the Agreement, such cases are not persuasive. *See Minter*, 258 F.R.D. at 122 (where motion to seal was "vigorously contested," distinguishing cases involving uncontested motions as factually inapposite).

Exhibit B to the Agreement titled "Ratecard For Services" is unlikely to have any bearing on the resolution of this dispute. Accordingly, that portion of the Agreement can remain under seal at present. *See Bureau of Nat'l Affairs*, 2012 WL 3065352, at *4 (allowing portions of a settlement agreement not relevant to the claims at issue to remain under seal). Sky Angel's motions for leave to file publicly will therefore be granted in part and denied in part.

## IV. Conclusion

For the foregoing reasons, the motion for judgment on the pleadings filed by Defendants will be denied, and Plaintiff's motions for leave to file unredacted versions of the pleadings, exhibits, and motions will be granted in part and denied in part. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
