IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SKY ANGEL U.S., LLC        :

                        :

    v.               :   Civil Action No. DKC 13-0031

                        :

DISCOVERY COMMUNICATIONS,
  LLC, ET AL.         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case are objections to the March 14, 2014 discovery ruling by Magistrate Judge Charles Day filed by Plaintiff Sky Angel U.S., LLC ("Sky Angel") (ECF No. 150), and a motion for a jury trial filed by Defendants Discovery Communications, LLC ("Discovery"), and Animal Planet L.C.C. ("Animal Planet") (ECF No. 108).  Also pending is a motion to seal the motion for a jury trial filed by Defendants.  (ECF No. 109).  The issues have been fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the objections will be overruled, and the motion to seal will be denied.  The motion for a jury trial will be denied.[1]

---

[1] Plaintiff also requested that Defendants be ordered to destroy all its copies of Plaintiff's withdrawn motion for summary judgment.  (ECF No. 121).  The parties filed a joint motion to extend the time for dispositive motions but, because of a communication breakdown between the undersigned and Judge

I.    **Background**

    A.    **Factual Background**

Sky Angel alleges the following facts in its complaint. (ECF No. 5). Sky Angel operates a subscription-based, multichannel video programming distribution service that delivers family-oriented video programming directly to the television sets of subscribers. Sky Angel enters into contracts with content providers to receive their programming *via* satellite earth stations and fiber optic connections. Sky Angel then formats the programming using Internet Protocol ("IP") technology; securely encrypts the programming; and ultimately transmits the programming *via* broadband Internet connections to the proprietary set-top boxes owned or leased by Sky Angel subscribers. The set-top boxes, which are secured by "industry standard encryption and conditional access technologies," decode the programming and send it to the subscriber's television set.

On October 3, 2007, Sky Angel entered into a contract with Discovery and Animal Planet ("the Agreement"). (ECF No. 5-1).

---

Day, the joint motion was not acted upon. Because the deadline had not been extended, Plaintiff went ahead and filed its motion for partial summary judgment. The joint motion to extend the deadline was approved, and the court ordered the motion for partial summary judgment to be marked as withdrawn without prejudice to renewal. (ECF No. 125). Plaintiff contends that this withdrawn motion now constitutes attorney work product that was disclosed pursuant to court order and should be destroyed. Plaintiff's request will be denied. Plaintiff cites to no case law that a withdrawn motion is attorney work product.

Pursuant to the Agreement, Discovery and Animal Planet agreed to provide Sky Angel a non-exclusive license and right to distribute five channels *via* its "Affiliate Systems": Discovery Channel, Discovery Kids Channel, Discovery Home Channel, Military Channel, and Animal Planet (together, "the Services"). In exchange for this license and the right to distribute the Services, Sky Angel agreed to pay Discovery and Animal Planet monthly licensing fees on a per-subscriber basis.

Section 7 of the Agreement establishes certain requirements for Sky Angel's distribution of the Services. For example, Sky Angel must: (1) "distribute each Service in its entirety, without delay, interruption, alteration, addition, deletion or editing of any portion thereof"; (2) "encrypt each of the Service signals or use a substantially similar method of security to secure each of the Service signals from [Sky Angel's] point of receipt of the Service signals through the points of reception by the Service Subscribers"; and (3) "take all necessary precautions with respect to Affiliate Systems to ensure that the Services are received only by parties who are Service Subscribers." (ECF No. 5-1 §§ 7.1, 7.2). Sky Angel also agreed to conduct an audit to reveal unauthorized recipients of the Services upon Defendants' request. (*Id.* § 7.3).

The Agreement provided that it would expire on December 31, 2014. (*Id.* § 1.11). Section 12.1 of the Agreement, titled "Default and Termination," provides as follows:

> Due and timely performance by [Sky Angel] is of the essence hereof. If [Sky Angel] defaults in the (a) making of any payments hereunder or (b) performance of any of its material obligations hereunder, including its obligations to maintain the security of a Service signal which failure to maintain the security of a signal results in a theft of such Service in an amount equal to or greater than ten percent (10%) of [Sky Angel's] then current base of Subscribers to that Service, and such default shall not be cured within five (5) days after written notice thereof to [Sky Angel], or if [Sky Angel] becomes insolvent, or if a petition under any bankruptcy act shall be filed by or against [Sky Angel] (which petition, if filed against [Sky Angel], shall not have been dismissed within thirty (30) days thereafter), or if [Sky Angel] executes an assignment for the benefit of creditors, or if a receiver is appointed for the assets of [Sky Angel], or if [Sky Angel] takes advantage of any insolvency or any other like statute (any of the above acts are hereinafter called "Event of Default"), then [Discovery and Animal Planet] may, in addition to any and all other rights which [Discovery and Animal Planet] may have against [Sky Angel], terminate this Agreement by giving written notice to [Sky Angel] at any time after the occurrence of an Event of Default. . . . Notwithstanding anything to the contrary herein, in the event [Discovery and Animal Planet] determine[] that the Service signal integrity or the Service signal security measures or distribution methodology used by or on behalf of [Sky Angel] are not satisfactory, [Discovery and Animal Planet]

4

> shall have the right to terminate this
> Agreement.

The Agreement also contains a choice-of-law provision establishing that the parties' rights and obligations should be governed by and construed according to the laws of the State of Maryland, without regard to conflict-of-laws principles. (ECF No. 5-1 § 13.8).

According to the complaint, Sky Angel performed all of its obligations under the Agreement between October 2007 and April 2010. Sky Angel did not make any changes to its signal integrity, signal security, or distribution methodology during this time period. Sky Angel further alleges that, for the first two years of the Agreement, neither Discovery nor Animal Planet complained about any aspect of Sky Angel's performance or its distribution methodology. Discovery and Animal Planet also did not exercise their rights under Section 7 of the Agreement to request an audit of Sky Angel's subscribers. In fact, in August and September 2009, Discovery encouraged Sky Angel to add additional Discovery programming channels to its offerings.

Nonetheless, on January 22, 2010, Discovery sent a letter to Sky Angel on behalf of itself and Animal Planet stating that:

> We have determined that the distribution
> methodology used by and on behalf of [Sky
> Angel] is not satisfactory. Accordingly,
> pursuant to Section 12.1 of the Agreement,
> we hereby elect to terminate the Agreement.
> In order to provide for an orderly

> transition process, including notification
> to your subscribers, we will provide you
> with a three (3) month transition period;
> accordingly, the Agreement will terminate
> effective on April 22, 2010.

(ECF No. 5 ¶ 31). Sky Angel's response, dated March 4, 2010, stated that "Discovery has no reasonable basis for its belief that th[e] IP distribution methodology [used by Sky Angel for more than two years without objection] is in any way unsatisfactory" and also offered "to cooperate in establishing the security of its system to Discovery's reasonable satisfaction." (*Id.* ¶ 32). On March 19, 2010, Defendants responded but did not provide any additional details regarding their purported dissatisfaction with Sky Angel's distribution methodology.

In an effort to avert termination, Sky Angel filed an emergency petition with the Federal Communications Commission seeking to halt any disruption in programming signals. According to Sky Angel, Discovery and Animal Planet's opposition to this request stated that:

> Discovery has concluded that there is a
> substantial legal risk that licensors of its
> programming will view the transportable Sky
> Angel distribution methodology as exceeding
> the distribution rights Discovery has.
> Discovery has further identified a serious
> and irreparable business risk in the form of
> damaged relations with its distributors, who
> might view [Discovery] as having granted Sky
> Angel rights that it refused them and that
> Discovery claimed not to grant anyone.

> Discovery also could face additional and
> substantial legal, business and financial
> risks if any of its distributors view that
> Sky Angel distribution methodology as having
> triggered [Most Favored Nation] obligations
> in their own Agreements.

(ECF No. 5 ¶ 37) (second alteration in original). Thus, according to Sky Angel, Defendants "admitted" that "their termination of the Agreement was unrelated to Sky Angel's performance." (*Id.*). On April 22, 2010, Discovery and Animal Plan severed their programming connections with Sky Angel. As a result of this termination, Sky Angel asserts that it suffered substantial business losses, including costs associated with altering its promotional materials to reflect the discontinuation of the Services and a decrease in current and future subscribers.

**B.   Procedural Background**

On January 3, 2013, Sky Angel filed a complaint in this court asserting that Defendants' termination of the Agreement constituted a breach of contract. (ECF Nos. 1 & 5).[2] Specifically, Sky Angel alleges that Section 12.1 "did not permit [Discovery or Animal Planet] to terminate the Agreement at any time without cause," but instead required Defendants to make a determination that the "distribution methodology

---

[2]   Sky Angel publicly filed a redacted version of its complaint, without any exhibits, as ECF No. 1, and filed unredacted versions of its complaint and the Agreement under seal, respectively, as ECF Nos. 5 & 5-1.

criteria" established by Section 7 was not satisfactory. (ECF No. 5 ¶¶ 50, 66). Sky Angel further asserts that Defendants did not make, and could not have made, such a determination, but instead "terminated the Agreement for other reasons including [Defendants'] extra-contractual legal and business concerns about maintaining the contract with Sky Angel" – a rationale that "was not sufficient under the Agreement and thus constituted an unauthorized, improper termination." (*Id.* ¶¶ 53, 58, 69, 74). Sky Angel also alleges that, by terminating the Agreement without "allowing Sky Angel a chance to resolve any purported problems," Defendants breached the implied covenant of good faith and fair dealing. (*Id.* ¶ 60). On March 1, 2013, Defendants filed their answer and did not request a jury trial. (ECF No. 23). On July 9, 2013, this court denied Defendants' motion for judgment on the pleadings (ECF No. 37), and discovery commenced. On December 24, 2013, the case was referred to Judge Day for discovery. (ECF No. 84). On February 18, 2014, discovery closed and Defendants also filed a motion for a jury trial. (ECF No. 108). Plaintiff opposed the motion on March 7, 2014 (ECF No. 129), to which Defendants replied on March 24, 2014 (ECF No. 143).

## II. Motion for a Jury Trial

### A. Standard of Review

The right to a trial by jury is "not automatic." *General Tire & Rubber Co. v. Watkins*, 331 F.2d 192, 195 (4th Cir. 1964). A party who intends to demand a jury trial must do so no later than 14 days after the last pleading directed to the issue is served. Fed.R.Civ.P. 38(b). If a jury demand is not properly served and filed, the right to a jury trial is waived. Fed.R.Civ.P. 38(d). Rule 39(b) governs where no timely demand has been made: "Issues on which a jury trial is not properly demanded are to be tried by the court. But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded."[3]

Resolution of a Rule 39(b) motion is "committed to the discretion of the trial court." *Malbon v. Pa. Millers Mut. Ins. Co.*, 636 F.2d 936, 940 (4th Cir. 1980). The factors a district court should consider when weighing whether to grant a jury trial under 39(b) include:

> (1) whether the issues are more appropriate for determination by a jury or a judge (*i.e.*, factual versus legal, legal versus equitable, simple versus complex); (2) any prejudice that granting a jury trial would cause the opposing party; (3) the timing of the motion (early or late in the

---

[3] There is no dispute that Plaintiff is seeking damages, a legal remedy for which the Seventh Amendment's right to a jury trial applies.

> proceedings); (4) any effect a jury trial
> would have on the court's docket and the
> orderly administration of justice.

636 F.2d at 940 n.11 (citations omitted).   Plaintiff contends that a fifth factor should be considered: the reason for the failure to make a timely demand.   Some district courts within this circuit have considered this factor.   *See, e.g., SPE GO Holdings, Inc. v. Larosa*, No. 1:09CV66, 2011 WL 96569, at *2 (N.D.W.Va. Jan. 11, 2011); *A Helping Hand, LLC v. Balt. Cnty., Md.*, 295 F.Supp.2d 585, 589 (D.Md. 2003); *Gelardi v. Transamerica Occidental Life Ins. Co.*, 163 F.R.D. 495, 496 (E.D.Va. 1995) (*citing Vannoy v. Cooper*, 872 F.Supp. 1485, 1489-90 (E.D.Va. 1995)).   While much of the harm caused to the opposing party and the court by a strategic delay in requesting a jury is captured by the second, third, and fourth *Malbon* factors, a party who takes a cynical approach to the Federal Rules should not be condoned.   Defendants' explanation for their delay will be considered.

### B.  Analysis

As to the first factor, Defendants argue that this is a straightforward breach of contract case, posing the question of whether Defendants justifiably terminated the Agreement.   This case will involve witness credibility, a factor well suited for juries.   Furthermore, Plaintiff is seeking both legal and equitable remedies in the form of damages and specific

performance.  A case involving legal remedies is appropriate for juries.

Plaintiff, in response, contends that the questions to be decided in this case are a mix of law and fact, specifically: Defendants' actions; the meaning of the Agreement's terms; and whether the parties' actions conformed with those terms. Furthermore, Plaintiff is seeking equitable relief, which counsels against a jury trial.

This first factor weighs in favor of denying Defendants' motion.  Although some questions of law present in this case – such as the meaning of the Agreement's terms - may be disposed of in the parties' motions for summary judgment, others may remain for resolution at trial.  It is not yet clear whether the factfinder will have to wrestle with complex matters of television content distribution, or whether Defendants were truly unsatisfied with Plaintiff's distribution methodology as opposed to a sham to get out of what had been revealed to be an unfavorable business deal.[4]

The second factor concerns prejudice to the Plaintiff of granting a jury trial.  Defendants contend that Plaintiff has not suffered any prejudice because the request was made well in

---

[4] Of course, "juries routinely decide complex factual issues and mixed questions of law and fact," *Vannoy v. Cooper*, 872 F.Supp. 1485, 1490 n.4 (E.D.Va. 1995), and the decision to submit this case to a jury would not be questioned but for the fact that Defendants were untimely in their jury demand.

advance of any trial, as the parties have not even filed their summary judgment motions. Defendants also contend that Plaintiff knew of Defendants' desire for a jury trial as evidenced by statements made in various filings concerned with the motions to compel. (*See, e.g.,* ECF No. 72-22, at 10-11 ("Discovery reserves all of its rights to seek further relief from the Court related to Sky Angel's discovery violations, including but not limited to a jury instruction regarding the deletion of Mr. Scott's emails or other appropriate sanction.")).

Plaintiff responds that Defendants' unexpected request would cause serious prejudice. It contends that for more than eight months it has been planning discovery in anticipation of a bench trial and not a jury trial. Plaintiff provides the following examples of the prejudice it will suffer: (1) because the court needs no aid with legal principles, it chose not to retain an expert witness that could have assisted the jury in understanding certain issues in this case, such as the nature and role of most-favored-nation clauses in the television industry; (2) Plaintiff would have altered the focus of its depositions, focusing more heavily on issues that matter more to jurors such as a witness's background; and (3) Plaintiff chose not to pursue all discovery motions, but only those it believed it most needed to prove the case in front of the court, which

can more easily identify the information truly relevant to the dispute. As an example, Plaintiff states that it did not compel non-parties to submit to depositions after those non-parties objected. Now that discovery has closed, Plaintiff cannot make the necessary adjustments to prepare for a jury trial and Defendants' motion should be denied on this basis alone.

Courts in this circuit presented with a similar situation to the instant case – request for a jury trial made after or just before the close of discovery – have been sympathetic to the nonmoving party's situation. *See Macon v. E.I. DuPont*, No. 3:10cv260, 2011 WL 1814925, at *3 (E.D.Va. May 11, 2011) ("To allow for a jury trial at this stage of discovery would prejudice [defendant], in that preparation and strategy required for bench and jury trials can vary greatly."); *SPE GO Holdings*, 2011 WL 96569, at *3 (plaintiff "justifiably relied on the assumption that the case would be tried to the Court throughout the motion practice and discovery, and that [plaintiff] has prepared its defense of this suit and coordinated its trial strategy accordingly. Therefore, this factor weighs against granting the motion."); *Vannoy*, 872 F.Supp. at 1490 ("The only possible prejudice that the court can discern is that the defendants may have conducted discovery on the belief that they were preparing for a bench trial and may not have conducted some discovery that they would have done in preparation for a jury

13

trial."). Cases that have discounted the claimed prejudice have been situations where the nonmoving party has known of its opponent's intention to seek a jury trial or there was plenty of time remaining in discovery. *See Yongxin Lu v. Johnson*, No. CBD 06-1105, 2010 WL 672935, at *3 (D.Md. Feb. 19, 2010); *Williams v. Food Lion, LLC*, No. 3:09cv108, 2009 WL 1809993, at *3 (E.D.Va. June 23, 2009). Defendants' argument that Plaintiff was put on notice of their desire for a jury trial based on comments about making arguments to a jury will be summarily rejected. The undersigned agrees with Plaintiff that how a party prepares and presents a case differs depending on whether it is front of a judge or a jury. The effect such a change would have on Plaintiff here, however, may be a bit overstated. The undersigned is not imbued with any greater knowledge of the intricacies of the television industry than a layperson; information about a witness's background can be brought out at trial; and Plaintiff admits that those non-parties it did not seek to compel to sit for a deposition were not critical to its case. This factor counsels slightly against granting the motion.

The third factor asks the court to consider the timing of the motion, *i.e.*, whether it is late or early in the proceedings. Defendants requested a jury trial before summary judgment motions have been filed and a trial date has not been

set.   Plaintiff focuses on a different date: the closure of discovery.   Because Defendants' request happened at the end of discovery, Plaintiff is unable to obtain additional discovery to cure the prejudice Defendants' proposed change of course would cause.

In this case, the second and third factors are tied together: the alleged prejudice is compounded by the fact that the motion was made without sufficient time to cure (absent the court extending discovery).   Defendants' singular focus on what has not yet happened – summary judgment motions and setting a date for trial – fails to recognize that the timing question also asks what has already occurred: discovery, the contours of which affect how the parties prepare for trial.   "The ability to properly prepare and the freedom from surprise on the eve of trial are two important principles to be protected by the consideration of timeliness of the 39(b) request." *Kelly v. Sentara*, No. 2:11cv672, 2012 WL 4340849, at *2 (E.D.Va. Sept. 20, 2012) (change from a bench trial to a jury trial more than three months before the close of discovery would cause no significant prejudice as defendant has ample time to propound supplemental discovery); *A Helping Hand*, 295 F.Supp.2d at 589 (jury request made when discovery was just beginning gives nonmoving party ample time to prepare for trial); *Gilbarco, Inc. v. Tokheim Corp.*, No. 2:95CV00581, 1997 WL 608950, at *3

(M.D.N.C. Feb. 3, 1997).  Only the second principle was fully preserved here.  *See Gilbarco*, 1997 WL 608950, at *3 (even though jury request came more than a year after action was filed, the request was early in the trial preparation process as there was still time to take discovery); *Vannoy*, 872 F.Supp. at 1490 ("Because the discovery cut-off date has now past, there is no time for the defendants to do any additional discovery that might be more appropriate for a jury trial than for a bench trial.").  The amount of harm caused to Plaintiff by Defendants' timing is connected to the prejudice it will suffer if Defendants' motion is granted.  As discussed above, that prejudice is real, but it is not major.  Consequently, this factor counsels slightly against granting the motion.

The fourth factor is the effect of a jury trial on the court's docket and the orderly administration of justice. Plaintiff points out that a "[j]ury trial[] necessarily entail[s] the marshalling of additional people for the courtroom and the inherent delays in waiting for everyone to arrive and be ready," including longer breaks mid-morning and mid-afternoon. *Wright Mfg. Inc. v. Great Dane Power Equip., Inc.*, No. DKC 97-2128, 1998 WL 105470, at *1 (D.Md. Jan. 8, 1998).  This is true as to time spent in the courtroom, but a bench trial has its own resource costs, albeit outside the courtroom in the form of producing a detailed opinion making findings of fact and

16

conclusions of law.  *See Lawrence v. Hanson*, 197 F.Supp.2d 533, 537 (W.D.Va. 2002) ("While a jury trial may at times strain the court's docket, the manner in which it benefits the effective administration of justice far outweighs the scheduling difficulties it can cause."); *Gilbarco*, 1997 WL 608950, at *3 ("Although a jury trial may require more time in the courtroom, a bench trial consumes more of the Court's time 'behind the scenes.'").  This factor is neutral.

In sum, the four factors laid out by the Fourth Circuit in *Malbon* counsel against grant Defendants' motion.  Consequently, the motion for a jury trial will be denied.

As to the fifth factor that some courts in this circuit have considered – reason for the delay – it too points against Defendants.  Defendants acknowledge that they failed to file timely a jury demand pursuant to Rule 38.  They explain that their original lead counsel (Akin Gump Strauss Hauer & Feld LLP) failed to include a jury demand and its current lead counsel (Weil, Gotshal & Manges LLP) proceeded on the mistaken belief that such a demand had been made.  Defendants' counsel submits that it first learned of the failure to demand a jury when it was raised by Plaintiff's counsel at a deposition on February 11, 2014.  Upon learning this, Defendants immediately requested a jury trial.  Plaintiff views this explanation with extreme skepticism.  It points out that Akin Gump is an experienced

commercial litigator that knows how to request a jury trial. Furthermore, Weil Gotshal was added in October 2013. It is highly implausible that Weil Gotshal – also highly skilled and experienced – would fail to read the docket and initial pleadings and discover its error at that time, when there was still plenty of time remaining in discovery. Plaintiff's counsel goes on to state that it had multiple interactions with Defendants' counsel over the course of many months and at no time did Defendants' counsel indicate that they were seeking a jury trial. In response, Defendants' counsel submits that they were operating under the mistaken understanding that a jury trial had been demanded originally, resulting in their off-hand remarks identified above that refer to a jury. They state that when they came into the case, the parties were already enmeshed in discovery and there was no precipitating incident that would have caused counsel to discern whether there was a jury demand in a case concerning money damages.

The undersigned is not prepared to deem Defendants' counsel's actions as having been taken in bad faith, but the apparent inadvertence is disappointing. As an initial matter, Weil Gotshal's apparent assumption that any capable counsel would always demand a jury trial in a case such as this is unwarranted. As discussed above, trying a case before a judge as opposed to a jury comes with certain advantages such that it

is not obvious that a jury trial is always the correct course of action. Defendants have presented no evidence that the decision to proceed with a bench trial was not a deliberate decision by Akin Gump that Weil Gotshal simply does not subscribe to. But even accepting that Akin Gump's decision was mere inadvertence and it was a fair assumption for Weil Gotshal that a firm as capable as Akin Gump would naturally demand a jury trial, it is a bit disconcerting that a firm with the track record of Weil Gotshal would fail to perform the basic task of reading the initial papers upon its addition to the litigation team. Even accepting that their entry into this case came in the middle of discovery, such an elemental task is to be expected of all counsel. Furthermore, Weil Gotshal is not a solo practitioner or small firm where overtaxed attorneys can be more susceptible to making oversights. Defendants' counsel have demonstrated they are willing and able to pour considerable resources into this case and, consequently, were capable of spending the small marginal cost needed to familiarize themselves with the complaint and answer. Defendants' explanation for their delay – even if considered – does not help their cause.

In conclusion, *Malbon*'s four factors counsel against granting Defendants' untimely motion for a jury trial. In addition, considering the reason for the delay does not change the result. Defendants' motion for a jury trial will be denied.

## III. Objections to Magistrate Judge's Ruling

### A.   Factual Background

Plaintiff moved to compel documents withheld by Defendants as protected by attorney-client privilege.  It sought emails for three categories of documents:

> (1) An "email memorandum" authored by Charles Myers, an engineer tasked with conducting a due diligence review of Sky Angel's distribution system, and addressed to Elisa Freeman, the Discovery executive responsible for negotiations with Sky Angel, and John Miller, Mr. Myers' engineering supervisor, disclosing results of a due diligence review of Sky Angel's distribution technology, and related e-mails between these individuals made in September 2007;
>
> (2) A series of emails between Mr. Myers, Ms. Freeman, and Mr. Miller made in October 2007; and
>
> (3) A series of emails about Sky Angel's distribution system made between Ms. Freeman and David Broughton, the non-lawyer Discovery employee responsible for talks with Sky Angel about adding another programming channel, made in September 2009.

The parties fully briefed the issues, and Judge Day conducted a hearing on multiple pending discovery motions on March 14, 2014. Judge Day ruled from the bench, denying Plaintiff's motion to compel:

> I am going in a different direction.  I am not going to compel these communications because I don't find them to be relevant. Again I believe that these communications leading up to this affiliation agreement are of no import.  Given the plain reading of

20

this affiliation agreement, this 12.1,
"Discovery can terminate this agreement at
any time if it is not satisfied with the
services of the plaintiff." The only
limitation is that that has to be done
basically in good faith.

. . .

Effectively if Discovery changes its mind
about the method of distribution, one day it
liked it and the next day it didn't.  So
long as that decision is actually based on
its dissatisfaction with that method of
distribution, as I read it, it could do so.
Doesn't matter what they knew coming in, if
it at some point they are dissatisfied, end
of story.

It sounds very one sided but it is the deal
that the parties made.  Therefore, discovery
about what Discovery knew, did not know, was
told, was not told before the execution of
the agreement to me is all irrelevant to the
claims and defenses of this case, which kind
of doubles back to my last ruling on
whatever that issue was.

And for the sake of clarity, if there is a
need for an alternative ruling, I am
convinced that Discovery has established the
existence of an attorney client privilege
with respect to these communications.  I am
convinced that the work done by Mr. Myers
and the discussions held with Ms. Freeman
were for purposes of assisting Mr. Kaminski
in the performance of providing legal advice
to Discovery.

And I am convinced it was all primarily for
legal purposes.  My review of the deposition
transcript along with representations of
counsel for both parties, clearly reveals to
me that Mr. Kaminski, Myers and others were
fully allowed at deposition to testify as to
the facts of the Myers due diligence
investigation.  And that was a tough spot to

be in.  Some delicate stuff going on there.
But no witness, however, was allowed to
speak to any discussion with Mr. Kaminski
about the legal import or effect.
Particular[ly] of those things leading up to
the agreement.  I think it was appropriate
in terms of protecting the attorney client
privileges and to comply with the demands of
discovery.

I will impose an additional requirement and
require the defense to submit an affidavit
in support from Mr. Kaminski, to dot all the
I's and cross all the T's that have been
represented in your opposition.  I am not so
satisfied that the supplementation by way of
Mr. Kaminski's deposition covers all of the
waterfront.  But I want it all covered
because I don't want to be out there on a
ledge on any of them.

So I want his statement under oath as to
what happened and how.  But that is the
alternative.  But I don't find that it is
relevant at all and this kind of doubles
back to the theories of damages and all of
that.

(ECF No. 154-1, at 59-61, Trans. 58:5-14, 59:1 - 60:17).  On

March 31, 2014, Plaintiff objected to Judge Day's order.  (ECF

No. 150).  Defendants responded on April 14, 2014 (ECF No. 161),

to which Plaintiff replied on April 24, 2014 (ECF No. 165).

**B.   Standard of Review**

Under 28 U.S.C. § 636(b)(1), non-dispositive pretrial

matters may be referred to a magistrate judge for hearing and

determination.  A district judge may modify or set aside any

portion of a magistrate judge's non-dispositive ruling "where it

has been shown that the magistrate judge's order is clearly

erroneous or contrary to law." *Id.; see also* Fed.R.Civ.P. 72(a); Local Rule 301.5.a.   "The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). The "clearly erroneous" standard applies to factual findings, while legal conclusions will be rejected if they are "contrary to law." *MMI Prods v. Long,* 231 F.R.D. 215, 218 (D.Md. 2005).

> Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence.  Nor is it to substitute its own conclusions for that of the magistrate judge. *See Tri-Star Airlines, Inc. v. Willis Careen Corp.,* 75 F.Supp.2d 835, 839 (W.D.Tenn. 1999). Rather, the court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence. *Id.* "It is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge." *Buchanan v. Consol. Stores Corp.,* 206 F.R.D. 123 (D.Md. 2002).

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda,* 390 F.Supp.2d 479, 486 (D.Md. 2005).

## C.   Analysis

Plaintiff contends that both of Judge Day's conclusions – his primary conclusion that the documents are not relevant and his alternative conclusion that the documents are protected by the attorney-client privilege – were clearly erroneous and contrary to law.

### 1.   Documents Are Not Relevant

Plaintiff argues that under federal discovery rules, it is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).  The scope of relevancy is broad and in its answer Defendants expressly denied those portions of Plaintiff's complaint alleging that "Sky Angel's distribution methodology fully and objectively met the understanding and expectation of the parties and the contractual specifications; that "Discovery never made . . . a determination that the distribution methodology as defined in the Agreement was not satisfactory"; and that "[a]t no time did Discovery . . . make any good faith efforts as required under the Agreement." (ECF No. 5 ¶¶ 54, 55, 57 (Complaint); ECF No. 26 ¶¶ 54, 55, 57 (Answer)).  Plaintiff contends that Defendants have made clear that their principal theory against Plaintiff's breach of contract claim is that Defendants lacked a conclusive understanding of Plaintiff's distribution methodology at the time it entered into the 2007 agreement.  The pre-agreement documents sought by Plaintiff concern due diligence performed by Defendants and go to the question of Defendants' knowledge of Plaintiff's distribution methods and are, therefore, relevant to the claims and defenses in this case.  Plaintiff argues that because Judge Day failed to consider Defendants' defense theory, he failed to apply properly

Rule 26(b)(1). Additionally, Plaintiff argues that the documents related to due diligence are relevant to Plaintiff's assertion that Defendants did not terminate the agreement in good faith or based on actual dissatisfaction with Plaintiff's distribution methodology. One of Plaintiff's theories is that its distribution methodology never changed and because of that, evidence that Defendants knew of this methodology when the agreement was signed supports the inference that the termination was not based on actual dissatisfaction. Plaintiff submits that it needs evidence as to what Defendants knew when the agreement was signed.

Defendants, in their opposition, do not make much of an effort to defend Judge Day's ruling on this ground. This is not surprising given that they did not make the relevance argument before Judge Day. Instead, Defendants spend the vast majority of their brief arguing that the documents are protected by the attorney-client privilege, only devoting the last three pages to Judge Day's principal ground for his ruling. They argue that the Agreement expressly prohibits Plaintiff from distributing *via* the Internet, but Defendants have "now conclusively shown that despite this contractual proscription, Sky Angel in fact utilized the public Internet to distribute the Services." (ECF No. 161, at 21). But they note that the merits of these

contractual arguments are "best addressed during the summary judgment briefing." (*Id.* at 23).

Judge Day's primary basis for his order is clearly erroneous and contrary to law. The undersigned, in adjudicating Defendants' motion for judgment on the pleadings, concluded that the complaint stated a plausible breach of contract claim regardless of whether an objective or subjective standard applies. Under the objective standard, the party to be satisfied must act "'in accordance with the reasonable expectations of the other party,' as established by the language of the contract itself." (ECF No. 37, at 14 (*quoting Questar Builders, Inc. v. CB Flooring, LLC*, 410 Md. 241, 282 (2009)). Under the subjective standard of honest satisfaction, "the opinion [of the person to be satisfied] control[s] in the absence of fraud or bad faith." (*Id.* (*quoting Clancy v. King*, 405 Md. 541, 568 (2008))). As explained in the July 9, 2013 memorandum opinion:

> The key allegations in the complaint are as follows. First, Sky Angel's distribution methodology complied with all requirements set forth in the Agreement. Second, Sky Angel did not make any changes to its distribution methodology throughout the first two years of the Agreement. Third, Defendants never complained about any aspect of Sky Angel's performance or its distribution method. Fourth, Defendants terminated the Agreement based on their purported dissatisfaction with Sky Angel's distribution methodology, but refused to

provide any details about their dissatisfaction. Fifth, Defendants later admitted in an administrative proceeding that they terminated the Agreement based on their conclusions (1) that other licensors could view the Sky Angel distribution methodology "as exceeding the distribution rights Discovery has" and (2) that their distributors could view Discovery "as having granted Sky Angel rights that it refused them and that Discovery claimed not to grant anyone." (ECF No. 5 ¶ 37).

If proven, these allegations could give rise to a reasonable inference that, after recognizing the breadth of the rights they had granted to Sky Angel, Defendants terminated the Agreement in an attempt to avoid the negative consequences that the Agreement could have on other, more lucrative business relationships. Put differently, a fact-finder could reasonably infer that Defendants terminated the Agreement only after realizing that they had made a bad bargain. If Plaintiff's distribution methodology did indeed comply with the requirements of Section 7, a fact-finder could conclude that Defendants' actions were inconsistent with Sky Angel's expectations under the Agreement and therefore were objectively unreasonable. *See Questar*, 410 Md. at 282. Likewise, if Sky Angel's allegations are substantiated, a fact-finder could also conclude that Sky Angel's distribution methodology was unsatisfactory to Defendants only in the sense that they were concerned with how that methodology might be perceived by third parties – a reason that would be "outside of the contract" and that could not be given effect, even under a subjective standard of honest satisfaction. *See Devoine* [*v. International Co., Inc.*], 151 Md. [690], [136 A. 37], 38 [(1927)]. Thus, contrary to Defendants' arguments, it cannot be said that the complaint's allegations, when taken as true, necessarily establish that

> Defendants had a legitimate basis for
> terminating the Agreement.

(*Id.* at 16-18). Consequently, Plaintiff's allegations that Defendants did not terminate the agreement in good faith were viable and Plaintiff was entitled to nonprivileged materials that may bear on this issue. *See Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D.Md. 2010) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case."). "Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F.Supp.2d 598, 601 (D.Md. 2009) (*citing United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D.Md. 2005)). Defendants made no attempt to advance a relevancy argument and, as discussed in a prior opinion of this court, documents such as those at issue here are relevant to Plaintiff's claims. To the extent Judge Day's order rests on this ground, it is clearly erroneous and contrary to law.

## 2. Documents Are Protected by the Attorney-Client Privilege

The alternative ground for Judge Day's decision, and the ground that both parties spend the majority of their efforts

disputing, is that the documents at issue are protected by the attorney-client privilege.

In *Newman v. State*, 384 Md. 285, 302-03 (2004), the Court of Appeals of Maryland set forth the relevant standard regarding when the attorney-client privilege applies:[5]

> The privilege is understood to be a rule of evidence that prevents the disclosure of a confidential communication made by a client to his attorney for the purpose of obtaining legal advice. In *Harrison v. State*, [276 Md. 122 (1975)], we adopted Professor Wigmore's definition of the attorney-client privilege:
>
> > (1) Where legal advice of [any] kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by his legal adviser, (8) except the protection [may] be waived.
>
> 276 Md. at 135, (*quoting* 8 John H. Wigmore on Evidece § 2292, at 554 (McNaughton rev. ed. 1961) (footnote omitted)). The common law privilege is codified in Section 9-108 of the Courts and Judicial Proceedings Article of the Maryland Code, which states, "A person may not be compelled to testify in violation of the attorney-client privilege."
>
> The privilege, although essential to an effective attorney-client relationship, is

---

[5] Because jurisdiction in this case is premised on diversity of citizenship, the law of Maryland (*i.e.*, the law of the forum state) applies. *See, e.g., Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 285 n.5 (4th Cir. 2000).

not absolute. *In re Criminal Investigation No. 1/242Q*, 326 Md. 1, 11 (1992). We have observed that "[o]nly those attorney-client communications *pertaining to legal assistance and made with the intention of confidentiality* are within the ambit of the privilege." *E.I. du Pont de Nemours* [*& Co v. Forma-Pack, Inc.*], 351 Md. [396], 416 (1998). This Court in *Lanasa v. State*, 109 Md. 602 (1909), observed, "[T]o make the communications privileged, they . . . must relate to professional advice and to the subject-matter about which the advice is sought." *Id.* at 617. *See also Morris v. State*, 4 Md.App. 252, 255 (1968) (*quoting Colton v. United States*, 306 F.2d 633, 637 (2[d] Cir. 1962) ("[T]he privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence.").

(emphasis in original, first alteration added). "Because the application of the attorney-client privilege withholds relevant information from the fact finder, the privilege contains some limitations and should be narrowly construed." *E.I du Pont de Nemours*, 351 Md. at 415; *see also In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984) ("the privilege is to be strictly confined within the narrowest possible limits consistent with the logic of its principle"). Communications seeking business, rather than legal, advice are not protected. *See E.I du Pont de Nemours*, 351 Md. at 417. "The privilege protects confidential communications, but not the underlying factual information." *Blanks v. State*, 406 Md. 526, 539 (2008). The party asserting the privilege "bears the burden of

establishing its existence and applicability." *E.I du Pont de Nemours*, 351 Md. at 406.

In written discovery, ensuring that a privilege or protection is asserted properly in the first instance and maintained thereafter, involves several steps. "First, pursuant to Federal Rule of Civil Procedure 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed." *Elat v. Ngoubene*, No. PWG-11-2931, 2013 WL 4478190, at *5 (D.Md. Aug. 16, 2013). A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. *See, e.g.,* Discovery Guideline, 10.d; Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions,* 62-64 (2005) (suggesting contents of effective privilege log). If, after this has been done, the requesting party challenges the sufficiency of the asserted privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis - by affidavit, deposition transcript, or other evidence - for each element of each privilege/protection

claimed for each document or category of document.  A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden.  *Elat*, 2013 WL 4478190, at *5.  "If it makes this showing and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can rule on the merits of the claim *or* order that the disputed documents be produced for *in camera* inspection."  *Id.* (emphasis added)

Plaintiff argues that Judge Day failed to follow this process by making a blanket finding of privilege without any evidentiary support instead of finding that each element of the privilege had been established for each document or category of documents.  Plaintiff asserts that Judge Day should have either ordered the documents produced or submitted to him for *in camera* review.

Plaintiff's argument will be rejected.  As Defendants point out, Judge Day considered deposition transcripts and the arguments of counsel.  (*See* ECF No. 154-1, at 60, Trans. 59:21-22).  While his ruling from the bench did not explicitly tick off each element of the attorney-client privilege, the transcript does not reveal that he failed to consider one or

32

more elements such that his ruling was clearly erroneous or contrary to law in this manner.

Plaintiff spends the bulk of its argument focusing on what it contends are the inadequacies in Defendants' privilege claims.[6] The desired documents are divided into three categories: September 2007 emails, October 2007 emails, and September 2009 emails.

---

[6] Plaintiff argues that Mr. Kaminski's court-ordered, post-decision declaration should be disregarded as a "sham affidavit." The "sham affidavit" rule is typically raised in the summary judgment context, where the nonmoving party may be attempting to create a genuine dispute of material fact by submitting a self-serving affidavit. "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). "Application of the sham affidavit rule at the summary judgment stage must be carefully limited to situations involving flat contradictions of material fact." *Elat v. Ngoubene*, ---F.Supp.2d ----, 2014 WL 253411, at *23 (D.Md. Jan. 21, 2014) (*quoting Zimmerman v. Novartis Pharm. Corp.*, 287 F.R.D. 357, 362 (D.Md. 2012)). Plaintiff points to the fact that during his deposition Mr. Kaminski repeatedly could not remember the details of the emails at issue here, yet was able to do so in his recently submitted declaration.

This argument will be rejected and the declaration will be considered. As Defendants point out, the deposition occurred over six years after the correspondence in question was written and Mr. Kaminski was testifying without the aid of the disputed emails. In his declaration, by contrast, Mr. Kaminski was able to review and draw upon those emails. This is not such a flat contradiction to invoke the sham affidavit rule, but to the extent that it is, the discrepancy is adequately explained.

### a.   September 2007 Emails

The first category includes a series of emails from September 2007, specifically an "email memorandum" authored by Mr. Charles Myers to Ms. Freeman and Mr. Miller concerning due diligence performed on Sky Angel (the "Myers Memo"), and related emails among these individuals (Privilege Log Entries 43, 44, 46, 47, and 83).  Mr. Kaminski was not an addressee or a copyee of the Myers Memo; he was on the other disputed emails. Defendants presented the following timeline: On September 10, 2007, Mr. Kaminski sent an email to Mr. Myers requesting information.  On September 14, the Myers Memo was sent to Ms. Freeman and Mr. Miller.  Ms. Freeman then forwarded the email to Mr. Kaminski.  Mr. Kaminski then responded directly to Mr. Myers and Mr. Myers responded to that message.  (ECF No. 154-1, at 53, Trans. 52:2-7).  Plaintiff does not dispute this timeline.  It contends that the evidence demonstrates that the primary purpose of Mr. Myers' due diligence review of Sky Angel was to inform Discovery's business decision on whether to enter into an agreement with Sky Angel, not for legal advice.

Maryland courts have not explicitly stated that only communications whose *primary purpose* is legal advice are protected, the Maryland Court of Appeals appears to endorse this rule, citing favorably to *Henson By and Through Mawyer v. Wyeth Laboratories*, 118 F.R.D. 584, 587 (W.D.Va. 1987), which stated

34

that "[F]or the privilege to apply, the client's confidential communication must be for the primary purpose of soliciting legal, rather than business, advice." *E.I. du Pont*, 351 Md. at 416.[7]   Whether a document was prepared for primarily a legal purpose is a factual determination for which the magistrate judge's determination will be upheld unless clearly erroneous. *See Gallagher Evelius & Jones, LLP v. Joppa Drive-Thru. Inc.*, 195 Md.App. 583, 598 (2010) ("Whether a document is subject to withholding from discovery as a result of some privilege is essentially a question of fact to be determined by the trial court.").   Plaintiff contends that the evidence demonstrates that the due diligence had both a business and legal purpose, that the business purpose was sufficient to warrant the investigation, and any legal purpose would not be the *primary purpose* of the investigation.   Mr. William Goldwyn, Discovery's business executive responsible for domestic distribution, testified that he would tell Mr. Eric Phillips and Ms. Elisa Freeman that the purpose of due diligence was to make sure Discovery was "comfortable or [] find out what they're doing before you enter into a distribution agreement." (ECF No. 132-1, at 3, Trans. 69:10-15).   Ms. Freeman testified that she asked

---

[7]   Plaintiff's citation to *United States v. Cohn*, 303 F.Supp.2d 672 (D.Md. 2003), and its formulation of the primary purpose test is unhelpful as that case was applying federal, and not Maryland, privilege law.

Mr. Charlie Myers to conduct the due diligence.  (ECF No. 132-3, at 5, Trans. 141:9-12).  Plaintiff also points to the fact that Mr. Kaminski does not claim that the *primary purpose* of the investigation was to assist him in drafting the Agreement. Plaintiff contends that it is not seeking communications sent or received by Mr. Kaminski, but instead emails sent between business persons discussing technical matters.  The Myers Memo was sent to Ms. Freeman and Mr. Miller, not Mr. Kaminski.  It was not created for Mr. Kaminski's purposes.  Plaintiff further argues that Ms. Freeman's act of forwarding the Myers Memo to Mr. Kaminski does not make that communication privileged.

Considering the context in which these communications were made, Plaintiff has not demonstrated that Judge Day's conclusion was clearly erroneous.  Mr. Kaminski states that throughout his time as an in-house attorney for Discovery, he acted exclusively in a legal and not a business capacity.  (ECF No. 147-1 ¶ 3; *see also* ECF No. 161-9, at 22, Trans. 180:1 (characterizing his role as "the legal representative for Discovery on the agreement and draftsperson of the agreement")).  Ms. Freeman testified that she and Mr. Kaminski told Charlie Myers what Sky Angel had relayed to them and asked him to do due diligence to see if Discovery could move forward.  (ECF No. 132-3, at 5-6, Trans. 141:20 – 142:4).  Mr. Myers provided similar testimony.  (ECF No. 130-2, at 14, Trans. 24:4-19).  Mr. Kaminski had discussions

36

with Mr. Myers regarding Sky Angel's technology done as part of
Mr. Myers's due diligence. (*Id.* at 12-13, Trans. 137:5 –
138:19). Mr. Kaminski testified that a number of protections
were put into the Agreement to protect Discovery based on
representations made regarding Sky Angel's technology. (ECF No.
161-9, at 11, Trans. 115:2-10). Although it is true that the
Myers memo was sent to both legal and nonlegal personnel, one
plausible conclusion from the evidence here is that the review
by the nonlegal personnel was part of the overall effort to
gather information needed by Mr. Kaminski to provide legal
advice. The cases Plaintiff cites to support the proposition
that merely copying an attorney on an email or forwarding him an
email does not make the document privileged involved situations
where the information at issue was not gathered for a primarily
legal purpose. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397,
403-04 (8th Cir. 1987) ("[A] number of courts have determined
that the attorney-client privilege does not protect client
communications that relate only [to] business or technical data
. . ., [but] [c]lient communications intended to keep the
attorney apprised of business matters may be privileged if they
embody an implied request for legal advice based thereon.");
*Syncora Guarantee Inc. v. EMC Mortg. Corp.*, No. MC 13-80037 SI,
2013 WL 2552360, at *2-3 (N.D.Cal. June 10, 2013) (results of
analysis performed by non-attorneys was part of normal business

practices; fact that it was sent to in-house counsel not sufficient to create an attorney-client privilege); *Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 568 (N.D.Ill. 2007) (communications between non-attorneys asking for a legal agreement and to have an attorney begin working on a matter is not protected); *F.C. Cycles Int'l*, 184 F.R.D. at 71 (no indication that technical information was requested or needed by the attorney to render further legal advice). Thus, Judge Day's conclusion regarding the September 2007 emails is not clearly erroneous or contrary to law and Plaintiff's objections will be overruled.

> **b.   October 2007 Emails**

The second category of documents Plaintiff seeks is a series of emails sent between October 1 and October 3, 2007 (Privilege Log Entries 21-23, 55, 89, 120-122). They are described as soliciting or providing information for purposes of legal advice regarding the Agreement, which was signed on October 3, 2007. Mr. Kaminski is an addressee or copyee on all but two emails: an email from Mr. Myers to Mr. Miller forwarding a solicitation of information for legal purposes, and Mr. Miller's response to Mr. Meyers (Entries 121 and 122). At the hearing, Defendants' counsel represented to Judge Day that the emails do not reflect an understanding of Sky Angel's distribution methodology, but are a solicitation of input in the

days leading up to the signing of the Agreement. (ECF No. 154-1, at 54-55, Trans. 53:19 – 54:17). Plaintiff argues that Mr. Kaminski's statements are simply conclusory and do not provide a factual basis for the privilege assertions. There is no explanation for why or how any business or engineering personnel were acting on Mr. Kaminski's behalf or for purposes of drafting the agreement. Plaintiff also argues that the timing of these emails alone cannot confer privilege. In its original motion before Judge Day, it attached a string of emails reflecting the fact that the parties were discussing the Agreement for weeks and Discovery provided a draft agreement on October 1, 2007. It is unclear what Discovery's engineers would have to discuss in the days that followed other than their understanding of Sky Angel's system.

"Communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services. . . . [I]n analyzing communications created at the direction of in-house counsel, courts must be wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure." *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006); *see also Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638-39 (D.Kan. 2006) (collecting cases). In his declaration, Mr. Kaminski states

that "[a]s the attorney responsible for drafting the Agreement
for Discovery, I was soliciting comments and input from others
at Discovery during this period for the purpose of providing
legal advice as relates to the Agreement.  I utilized Ms.
Freeman in order to solicit necessary input in this regard, and
as such Ms. Freeman copied me on her emails." (ECF NO. 161-8 ¶
11).  Mr. Kaminski acknowledges that while he was not copied on
every email, all information solicited or obtained was done on
his behalf and at his request for the purposes of drafting the
Agreement and providing legal advice.  (*Id.* ¶ 12).  The evidence
submitted does not indicate that Judge Day's conclusion that the
October 2007 emails concern information requested by Mr.
Kaminski to aid in his provision of legal services was clearly
erroneous and Plaintiff's objection will be overruled.

   c.   **September 2009 Emails**

    Finally, Plaintiff objects to Judge Day's decision to deny
the motion to compel as to three emails from September 2009
(Privilege Log Entries 19 and 20, and redaction to DIS-001027).
The first email, dated September 17, 2009, is from Mr. Kaminski
to Ms. Freeman and Mr. Broughton, Discovery's Director of
Special Markets.    It  is  described  as  a  solicitation  of
information for purposes of legal advice regarding a draft
amendment to the Agreement.  The two withheld emails are from
September 22 and 23, 2009 and are between Ms. Freeman and Mr.

Broughton and reflect the solicitation and provision of information for purposes of legal advice regarding the draft amendment to the Agreement.  At the hearing, Defendants' counsel characterized these emails as similar to the October 2007 emails in that they do not involve a discussion of Sky Angel's distribution methodology, but are a solicitation of input regarding a potential amendment to the Agreement.  (ECF No. 154-1, at 55-56, Trans. 54:8-16, 55:5-18).  In his declaration, Mr. Kaminski states that Discovery and Sky Angel were discussing a draft agreement in September 2009.  He was Discovery's legal representative in regard to this amendment and was responsible for drafting it.  To that end, he sent the draft amendment and solicited certain information about it to Ms. Freeman and Mr. Broughton.  The emails between Ms. Freeman and Mr. Broughton reflect discussions concerning the draft amendment that Mr. Kaminski solicited for purposes of rendering legal advice.  (ECF No. 161-8 ¶¶ 13-15).

Plaintiff argues that these emails bear on the issues of whether Discovery understood and was satisfied with Sky Angel's distribution methods immediately before the termination.  The fact that Mr. Kaminski was not a direct recipient of the requested emails suggests that they were not made for the primary purpose of assisting him in providing legal services.  Mr. Kaminski does not state that he was ever forwarded the

emails exchanged between Ms. Freeman and Mr. Broughton and, with no attorney involvement, the emails cannot be protected by the attorney-client privilege.

As discussed above, intracorporate communications concerning information requested by a lawyer for the purposes of rendering legal advice can be protected by the attorney-client privilege. Judge Day's conclusion that the September 2009 emails are privileged was not clearly erroneous or contrary to law and Plaintiff's objections will be overruled.

## IV. Motions to Seal

Defendants have filed a motion to seal their motion for a jury trial and accompanying exhibits. (ECF No. 109). "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). "The common law presumes a right of the public to inspect and copy 'all judicial records and documents,'" *id.* at 575 (*quoting Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)), although this presumption "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Id.* (*quoting Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). Under this common law balancing analysis,

"[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253. "Ultimately, under the common law[,] the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's 'supervisory power,' and it is one 'best left to the sound discretion of the [district] court.'" *Va. Dep't of State Police*, 386 F.3d at 575 (*quoting Nixon*, 435 U.S. at 598–99) (second alteration in original).

In addition to the public's common law right of access, the First Amendment provides a "more rigorous" right of access for certain "judicial records and documents." *Va. Dep't of State Police*, 386 F.3d at 575-76; *see also In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (explaining the "significant" distinction between the two rights of access). Where the First Amendment does apply, access may be denied "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180; *see also, Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014).

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record'" in the first instance. *In re Application*,

707 F.3d at 290.   The Fourth Circuit recently held that judicially authored or created documents are "judicial records," as are documents filed with the court that "play a role in the adjudicative process, or adjudicate substantive rights."   *Id.* (*citing Rushford*, 846 F.2d at 252; *In re Policy Mgt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (unpublished table decision)).

Thus, as a substantive matter, when a district court is presented with a request to seal certain documents, it must determine two things: (1) whether the documents in question are judicial records to which the common law presumption of access applies; and (2) whether the documents – if judicial records – are also protected by the more rigorous First Amendment right of access.   *In re Application*, 707 F.3d at 290; *see also Va. Dep't of State Police*, 386 F.3d at 576.

The sealing of any documents filed with the court must also comport with certain procedural requirements.   First, the non-moving party must be provided with notice of the request to seal and an opportunity to object.   *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).   This requirement may be satisfied by either notifying the persons present in the courtroom or by docketing the motion "reasonably in advance of deciding the issue."   *Id. at* 234.   In addition, "less drastic alternatives to sealing" must be considered.   *Va. Dep't of State Police*, 386 F.3d at 576; *see also* Local Rule 105.11 (requiring any motion to

seal to include both "proposed reasons supported by specific factual representations to justify the sealing" and "an explanation why alternatives to sealing would not provide sufficient protection"). Finally, if sealing is ordered, such an order must "state the reasons (and specific supporting findings)" for sealing and must explain why sealing is preferable over its alternatives. *Va. Dep't of State Police*, 386 F.3d at 576.

It is not necessary to reach the question of whether the documents at issue satisfy either the common law or First Amendment right of access (or whether any right of access applies at all),[8] because Defendants do not comply with Local Rule 105.11, which applies to all documents sought to be filed under seal and requires the party seeking sealing to include "(a) proposed reasons supported by specific factual

---

[8] *See Ohio Valley Envtl. Coal. v. Elk Run Coal Co., Inc.*, 291 F.R.D. 114, 123-24 (S.D.W.Va. 2013) ("Because discovery motions . . . involve procedural rather than 'substantive' rights of the litigants, the reasoning of *In re Policy Management* supports the view that no public right of access applies [to discovery motions]." (alteration in original) (*quoting Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1418312, at *9 (M.D.N.C. Apr. 2, 2010))). Moreover, at least four circuit courts of appeals have held that "[t]he better rule is that material filed with discovery motions is not subject to the common law right of access." *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 10 (1st Cir. 1986).

representations to justify the sealing and (b) an explanation
why alternatives to sealing would not provide sufficient
protection." The parties both represent that the documents are
designated "Confidential" or "Highly Confidential – Attorneys'
Eyes Only" pursuant to the parties' joint Protective Order
granted by this court, which requires the parties to file any
such material under seal. (ECF Nos. 53 and 54). The motion to
seal is written in a boilerplate fashion, with the parties
stating that that "[t]here is no alternative to sealing that
would provide sufficient protection to the confidentiality of
the materials subject to the Protective Order." (ECF No. 109
¶3). The parties have made no attempt to redact portions of
the filings as opposed to sealing the documents in their
entirety. *See Visual Mining, Inc. v. Ziegler*, No PWG 12-3227,
2014 WL 690905, at *5 (D.Md. Feb. 21, 2014) (denying motion to
seal when the only justification was that the documents are
"confidential" under a court-approved Protective Order); *Under
Armour, Inc. v. Body Armor Nutrition, LLC*, No. JKB-12-1283, 2013
WL 5375444, at *9 (D.Md. Aug. 23, 2013) (denying motions to seal
where "[t]he parties . . . provided only the barest support for
the motions to seal, usually relying on the protective order
issued in th[e] case" and failed to "provide 'specific factual
representations' to justify their arguments"); *Butler v.
DirectSAT USA, LLC*, 876 F.Supp.2d 560, 576 n.18 (D.Md. 2012)

46

("In their motion to seal, Plaintiffs state only that they seek to seal the exhibits pursuant to the confidentiality order, an explanation insufficient to satisfy the 'specific factual representations' that Local Rule 105.11 requires."). The undersigned recognizes that there are sensitive matters at issue in this case which could be kept out of the public realm, but the instant dispute concerns Defendants' request for a jury trial. The undersigned is completely at a loss to understand how Defendants' motion for a jury trial, which spends the majority of its fourteen pages discussing the import of various district and appellate court decisions, with only glancing reference to the facts of this case, needs to be sealed in its entirety. Consequently, the motion to seal will be denied and Defendants will have fourteen (14) days to submit redacted copies of their brief and accompanying exhibits with justifications for such redactions or explain why nothing less than sealing the documents in full is appropriate.

**V.   Conclusion**

For the foregoing reasons, Defendants' motion for a jury trial will be denied.  Plaintiff's objections will be overruled. The motion to seal will be denied.  A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
